# COUNTY OF LINCOLN.

CHARLES NASH, & *als.*, *Appellants from decree of Judge of Probate, versus* ISAAC REED.

The heirs of a testator, who contest the probate of his will, are not excluded as witnesses, "as heirs of a deceased party," and as being within the exception of § 83, of c. 82, of the R. S. of 1857.

A witness to a will, who, at the time of its execution, received from the testator a deed of land, and whose mother, by the will, was made the principal devisee, will nevertheless be a competent witness and "credible," within the meaning of the statute.

THIS was an appeal from the decision of the Judge of Probate, probating the will of Church Nash, deceased.

It appeared in evidence, that D. G. Wagner, one of the three subscribing witnesses, was the son of the testator's wife, by a former husband; that his mother married the testator when the said Wagner was about eleven years of age; that he had been brought up in the testator's family; married and living afterwards in another part of testator's house, with testator,

and occupied some portion of testator's farm, for planting, kept a cow, horse and some young stock in his barn, and pastured them in his pasture, for all which he compensated said Nash; and himself procuring hay sufficient for his stock during winter. It did not appear that there had been any particular settlement of these matters, but an equivalent had been rendered therefor.

It appeared, also, by the testimony of Wagner, that a deed was given to him, by the testator, of ten acres of land, which was made out, executed and delivered at the time of the making and executing the will, the consideration being, as testified by said Wagner, a certain amount of money which he had let the testator have a number of years before, at different times, some of which was of more than six years standing, and also a note for a further sum, which was never given up to the testator or cancelled.

In behalf of the appellants, it was contended that said Wagner was not a credible and disinterested witness to the will, within the meaning of the statute relating to wills; but the Court ruled otherwise, and his testimony was admitted.

The appellants offered as a witness Jacob Nash, and other heirs of the testator, who were appellants and parties in this case, but, being objected to, for that cause, as incompetent witnesses, the Judge decided and ruled that they were inadmissible and rejected their testimony.

It was proposed to prove, by said Jacob and the other heirs referred to, that the testator was not of sound disposing mind and memory, at the time of executing the will, and that the testator was induced to make such a will, by the fraudulent practices and influences of said Wagner and others.

*Ruggles*, in support of the exceptions, argued that,—

Wagner, one of the three witnesses, was not a disinterested or *credible* witness, within the meaning of the statute. His testimony shows that he took a deed of testator at the same time, the consideration of which was exceedingly questionable — an existing note not given up, and outlawed moneys of

which no account had been made. It is quite apparent, from all that could be elicited from him, that it was a part of the same transaction; the disposal of testator's estate by will and by deed, altogether and equally depending for validity on the same sound and disposing mind and memory. I say, a part of the same transaction, *quasi* a part of the will, conveyed by a deed, when it might and should have been in the will. And for what purpose? But to make him a witness to the will, and, as such, to avail of his opinion of sanity, &c., so often arising in such case, and actually *the* question in this case, in connection with that of "fraudulent practices and influences by said Wagner." Credibility or competency, in such a case, where opinions and judgment may be expressed by subscribing witnesses, should appear clearly and satisfactorily. It appears by the will that this Wagner's mother was the devisee of all the estate not conveyed by the deed, to the disinheritance of the children by the first wife. Was Wagner *credible* and competent on a question of sanity, in a case where his interest is so mixed up with the questions arising under the will?

2. Jacob Nash and other appellants and parties should have been admitted under the statute allowing parties to be witnesses. This case does not fall within the exception in the 83d § of the R. S., c. 82.

They were not heirs of a deceased "*party*." The testator was never a "*party*," and could never have been a "*party*." The action did not and could not arise in his lifetime. It might as well be objected in an action by one heir against another heir, on some controversy respecting their patrimony, that they were *heirs* of a *deceased party*. See statute, § 83.

Reed never was, and is not yet, executor, in the sense in which the statute would exclude him. He is styled in this proceeding, executor, not as being in fact and in law, executor, but as being the one nominated as executor by the will. The instrument is called a will; but it is, in fact, not a legal will until probated. Reed may decline the trust, never give bond, and not enter upon the duties of executor. He presented the

will for probate, which is made his duty by statute, not as executor, but as being nominated to that office, which he may decline or accept after the will shall be probated. He would not be liable to any suit as executor — could maintain none. Were one sued as executor in his own wrong, would such come under the excepting section? I think not, clearly; not being within the reason of the statute, and not actually executor.

3. These proceedings, in relation to establishing and approving wills by the Probate Courts, do not come within the reason of the exception, and so are not affected by it.

The object of the exception was to take those cases out of the operation of the statute, in which the parties would not stand on an equal footing, as to their knowledge of the transactions embraced in the suit, arising from the death of one in whose name the action might have been brought or had been brought in his lifetime, a party to the transaction, and who might have been a witness to it in his lifetime. It applies to the whole range of cases in assumpsit, debt, trespass, &c., where either party is executor, — distinguishable from these proceedings on the probate of wills. In these cases, the parties on both sides are always presumed to stand on an equality as to their means of knowing the facts to be enquired into. The (nominal) executor might be presumed even to possess a better knowledge than most others, being generally selected for that trust from the friends of the testator who are best acquainted with the matters to be enquired of. The testator could never be a witness in these cases at all, for no question would arise on which any action or process could be predicated in his lifetime.

The reason for the exception entirely fails here, in this entire class of cases. And there being no heirs of a deceased *party*, nor one who could at any time have, by possibility, become a party, and the plaintiff not being executor in law, it is not a case contemplated by the statute.

*Gould, contra :—*

1. Wagner was not devisee nor legatee under the will, nor had he any interest in the estate, having settled with the testator before his death. Nothing in the case shows that he was not a *disinterested* or a "*credible*" witness to the will.

But R. S., c. 92, § 2, (1840,) only required that witnesses to a will should be "credible," not disinterested, also, as R. S., 1857, c. 74, § 1. The old statute provided for the proof of wills by *legatees*, even, they forfeiting their legacies by offering themselves as witnesses. "Credible" witness, means competent at the time of attestation, under the statute. *Hawes* v. *Humphrey*, 9 Pick. 350 ; *Haven* v. *Hilliard*, 23 Pick. 10.

2. The witnesses who were rejected were "made parties as *heirs* of a deceased party." And the *other* party to the suit was an " executor." So that the witnesses were, for both of these reasons, within the *exception* of the statute admitting parties to testify. R. S., (1857,) c. 82, § 83.

It may be said, that the *appeal* vacated the decree of the Probate Court, and, therefore, Isaac Reed was not executor. But he is necessarily made a party to the proceedings, *as executor*, or they could not go on; and he is to be regarded as executor *de facto*, for the purpose of *setting up the will*, not for the purpose of executing its provisions, until it has been established; and he is to be *so* regarded, or he is *no party*, and he has no right to appear in the case. The person named as executor in the will, is so treated and regarded by the Court, for the purpose of representing the testator in the proceedings required by law to probate his will. In this representation, he is the testator's *executor*, and, as such, is by law made a party to the contest.

It is the *will* that is in contest. To it, the testator was a "party ;" the appellants are made parties as his *heirs*, and the appellee, as his *executor ;* both are within the *specific terms* of the statute. During the contestation of the will, there must be some party, legally authorized to represent it and the interests under it, entitled to the temporary custody of the estate, to prevent waste. If there is an executor appointed

by the testator, he must be the party, and thus, as already remarked, becomes executor *de facto.*

The *reason* of the exception in the statute would exclude the respondents, as well as the *terms* of it.

The exception was founded upon the consideration that, "where one of the parties to the contract or *transaction* in contest is dead, it would be unjust to admit the living to testify to facts which were within the knowledge of the deceased party; it would be giving the living an unfair advantage. They might falsify the facts with impunity."

The will, so far as the contest in Court, as to its *construction,* its *validity,* its due *execution,* &c., are concerned, is in the nature of a *contract,* to which the testator is a party; it is a contract between him and his devisees and legatees; that contract is in *contest.* The testator must be represented in Court by *somebody;* he appoints an executor; the executor knows nothing of the facts, and it would be unjust to the testator, and tend to pervert his wishes, if, in that contest, the party opposing should be admitted to testify to facts peculiarly within his knowledge, which, *unexplained,* might overthrow his will.

The respondents "are made parties, as heirs of a deceased party." This does not necessarily mean party to that *particular suit or proceeding.*

To give the statute such a construction would deprive the administration of justice of the beneficial effect of the exception, in a large class of cases.

The true construction is, "heirs of a deceased party, to the *res adjudicandum.*" It should not be extended to contracts or transactions collateral or *incidental* to the suit; as the execution of a *deed*—but, as in the case of a *will,* to the *thing* which is *itself the suit,* so to speak—the *entire contest.*

The opinion of the Court was delivered by

CUTTING, J.—A question is here presented, involving the construction of R. S., c. 82, § § 78, 83 and 84, which being collated, may be read thus:—"No person shall be excused

or excluded from being a witness in any civil suit or proceeding at law, or in equity, (including special proceedings before courts of probate,) by reason of his interest in the event thereof as party or otherwise, except, at the time of trial, the party prosecuting, or the party defending, or any one of them, is an executor or an administrator, or made a party as heir of a deceased party."

On the trial in this Court, the case finds that, "the appellants offered as a witness, Jacob Nash, and other heirs of the testator, who were appellants and parties; but being objected to for that cause as incompetent witnesses, the Judge decided and ruled that they were inadmissible, and rejected their testimony."

The bill of exceptions does not necessarily present the question raised at the argument, as to whether the appellee can be said to be an executor of a will before its probate and before he has been legally qualified to act, for no such objection was specifically made to the admission of the witnesses, and therefore it may be inferred that the Judge did not rule upon that point.

The question then legitimately before us is, whether the witnesses, who were offered and excluded, *were made a party as heirs of a deceased party.*

Before, however, proceeding to the answer, it may be well to ascertain the origin and object of the statute, which has produced so great a change in the common law. The practicability of the statute allowing parties to be witnesses, is not of recent discovery. Nor was the idea originally suggested by Jeremy Bentham, or by any of his modern disciples. As early as 1765, and before Bentham's matriculation, Sir William Blackstone, speaking of the admissibility of parties as witnesses in Courts of equity and civil law, remarked that, "It seems to be the height of judicial absurdity, that, in the same cause, between the same parties, in the examination of the same facts, a discovery by the oath of the parties should be permitted on one side of Westminster Hall, and denied on the other; or that the Judges of the one and the same Court

should be bound by law to reject a species of evidence, if attempted on a trial at bar, but when sitting the next day as a court of equity, should be obliged to hear such examination read, and to found their decrees upon it. In short, within the same country, governed by the same laws, such a mode of inquiry should be universally admitted or else universally rejected." This seed, so early sown in England, after a century had nearly expired, first germinated there, and subsequently became an exotic here.

But while the statute authorizes the parties to testify, it also places them upon an equality and excludes them both, when one is laboring under certain legal disadvantages. And since, by our declaration of rights, "no person shall be compelled to furnish or give evidence against himself," the statute excepts parties, where the cause of action implies an offence against the criminal law on the part of the defendant, unless he offers himself as a witness. And, also, in cases where one of the parties has deceased since the cause of action or proceedings accrued. The above embraces substantially the whole subject-matter of the three sections before cited, which were inserted for the benefit of the defendant, and the legal representatives of a deceased party; for the former, in order to protect his constitutional rights; and, for the latter, because of the decease of their ancestor, whose testimony alone, if living, might control that of his adversary. From the foregoing considerations, if the question was presented, it might not be too presumptuous to remark, that the statute exceptions were never intended to embrace proceedings in relation to the probate of wills.

But the question returns, were the appellants made a party as heirs of a deceased party? In our opinion they were not. The testator never was a party, and could not, in the nature of things, be a party to the present suit; and, unless once a living party, he cannot be said to be a deceased party;—correlatively the latter implies the former. That provision, now under consideration, had reference to c. 104, § 16, which provides that no real action shall be abated by the death of

either party, after its entry in court, but shall be tried after notice has been duly served upon those interested in his estate. In such case an opportunity is presented for the heirs of a deceased party to become a party, which brings it within the statute exception.

We entertain no doubt that Wagner, one of the three subscribing witnesses, was a credible witness, and properly admitted to testify. *Hawes* v. *Humphrey*, 9 Pick. 350; *Haven* v. *Hilliard*, 23 Pick. 10, cited for the appellee.

*Exceptions sustained, verdict set aside,*
*and a new trial granted.*

TENNEY, C. J., and RICE, APPLETON, MAY, and GOODENOW, J. J., concurred.

[This case was argued June Term, 1859.]