Lord, *Ex'x*, *v.* Lord & *a.*, *Ap'ts.*

| 58 | 7 |
| 67 | 255 |
| 58 | 7 |
| 71 | 572 |
| 58 | 7 |
| 74 | 399 |

The interest of an attesting witness of a will, to be disqualifying, must be a present, certain, and vested interest.

The name of an attesting witness of a will who is unable to write, may be written by another, at his request, in his presence and in the presence of the testator.

The fact that a will was written by the executrix, who was also residuary legatee, is evidence to be considered by the jury on the question of fact whether the will was obtained by her undue influence and fraud; but the law does not require her to explain why the will was written by her.

Probate Appeal.   The appellants presented issues concerning the execution and attestation of a will, the sanity of the testator, and concerning undue influence, fraud, and deceit on the part of the executrix. Verdict for the executrix.

The evidence tended to show that the testator signed the will in the presence of the witnesses, and requested them to sign as witnesses, and declared the instrument to be his will; that one of the witnesses was a brother of the executrix, who is the principal legal residuary legatee, and that she had no father or mother living, and no children, and that at that time he was an heir at law of the executrix.   It also appeared that he has since deceased.   The evidence also tended to show that one of the other witnesses signed his name; that his wife was the other witness; that she, being unable to write, requested her husband to write her name as a witness to the will, and he, in her presence, and in the presence of the testator, did sign her name as a

witness. She did not take hold of the pen during the act, and did not make any cross or mark upon the will.

In regard to the strength of mind requisite to entitle a person to make a will, the court instructed the jury that the law looks only to the competency of the understanding; and neither age, nor sickness, nor extreme distress or debility of body, will affect the capacity to make a will, if sufficient intelligence remain. The failure of memory is not sufficient, unless it be total, or extend to the testator's immediate family or property. Mere weakness of understanding is no objection to a man's disposing of his property by will, for courts cannot measure the size of people's understandings and capacities, nor examine into the wisdom or prudence of men disposing of their estates;—that it was for the jury to answer whether the testator, at the time he made his will, understood and comprehended the business in which he was engaged when he put his hand to the will; whether he understood what property he had to dispose of; to whom he wished to give it; who were the objects of his bounty; who his relatives were who had claims upon him by nature, by affection, and in other ways to his property,—and if he so understood, whether he signed this will voluntarily;—that, if he understood what he was doing, what property he had to dispose of, and to whom he wanted to give it, it was in the eye of the law sufficient: that was mind enough for him to have.

The appellants requested the court to instruct the jury, that, it appearing that the will was written by Mrs. Lord, the executrix, she was called upon to explain it. The court declined to give the instruction as requested, but did instruct them that the fact that it was written by her was a circumstance that they might consider as bearing on the question of undue influence; that they might consider that fact, and the fact that she was the residuary legatee, and all the evidence and all the circumstances surrounding the parties at the time and before the execution of the will, as bearing upon the question whether it was procured to be executed by the executrix by undue influence, fraud, or deceit practised upon the testator by the executrix.

To the foregoing rulings and instructions the appellants excepted.

*Copeland*, for the appellants.

*Wheeler* and *Wells & Burleigh*, for the executrix.

FOSTER, J. The term "credible" witness, as used in the statute relating to the attestation of wills, means, simply, that the witness must be competent, or not disqualified at the time of the attestation, to be sworn and to testify in a court of justice. *Carlton* v. *Carlton*, 40 N. H. 14; *Frink* v. *Pond*, 46 N. H. 125; *Hawes* v. *Humphrey*, 9 Pick. 350; *Haven* v. *Hilliard*, 23 Pick. 10; *Sparhawk* v. *Sparhawk*, 10 Allen 155; *Hindson* v. *Kersey*, 1 Burr. 97; 1 Redf. Wills (4th ed.) *253. A witness, incompetent by reason of interest, is

therefore not "credible" (3 Saund. Pl. and Ev. 1265);—for our statute, providing that interest in a cause shall not disqualify a witness (Gen. St., c. 209, s. 13), is not applicable to the attestation of wills. Gen. St., c. 209, s. 23. The question of the competency of the brother and heir at law of the executrix as an attesting witness must, therefore, be determined by the rules of the common law.

And at common law, the interest, to be disqualifying, must be a present, certain, and vested interest. 1 Greenl. Ev., s. 390; 4 Stark. Ev. 745; *Hawes* v. *Humphrey*, before cited; *Manchester Bank* v. *White*, 30 N. H. 459; *Nash* v. *Reed*, 46 Me. 168; *Jones* v. *Tebbetts*, 57 Me. 572. The brother of the executrix had no such interest, and was therefore competent and "credible."

The attestation is alleged to be defective because the name of a witness who was unable to write was written by another person. Our statute, which is copied substantially from that of 29 Car. II, c. 3, s. 19, provides that wills shall be "signed and sealed by the testator, or by some person in his presence and by his express direction, and attested and subscribed in his presence by three or more credible witnesses." Gen. St., c. 174, s. 6.

The case finds that the testator requested all those persons, whose names are appended to the attestation clause, to sign as witnesses; that one of those persons, being unable to write, requested her husband to write her name as a witness to the will. Whatever she said or did, therefore, was said and done *animo testandi*. The intention, in this respect, is material. *In the goods of Maddock*, L. R., 3 P. and D. 169; *In the goods of Duggin*, 39 L. J. 24.

It is clearly settled that a witness may effectually subscribe his name by a mark, or by initials, or by a fictitious name, if used without the purpose of personating another, and that, if he cannot write, his hand may be guided by another. 1 Redf. Wills 229, s. 19, and cases cited; 1 Jarm. Wills (4th Am. ed.) 73, and Am. note. An acknowledgment of a previous signature by a witness is not a sufficient attestation, though such acknowledgment by a testator is a sufficient execution. *Chase* v. *Kittredge*, 11 Allen 49. The doctrine of this distinction is severely criticised by Judge REDFIELD (1 Redf. Wills, c. 6, s. 1V, s. 19 and note), but it is believed to be well established.

In *Chase* v. *Kittredge*, before cited, it was said,—"The witnesses are required to subscribe; in other words, they are required to do some act apparent upon the face of the will;" but by this language it is not intended that the "apparent act" may not be a subscription through the medium of an agent, if the act be done in the presence of the testator, by his request, and with the intention of attestation. The subscription of the name of an illiterate witness, whose hand is guided by another, cannot be regarded as any more "an act apparent on the face of the will," than is the writing of the same name wholly by another hand,—the act of writing in both cases being prompted by the same intelligence, which is the *animus testandi* of the person

whose name is written. In either case, the hand which holds the pen is controlled by the same will; and *qui facit per alium, facit per se.* The validity of the attestation depends upon the signing of the name of the witness by his authority and in his presence, and not upon the fact of his making a mark, or doing any other manual act in connection with the signature. *Jesse* v. *Parker,* 6 Grat. 57; *Upchurch* v. *Upchurch,* 16 B. Mon. 102.

An agent, without a sealed authority, cannot bind his principal by deed under seal; but this acknowledged rule is true only in the absence of the principal;—for, if the principal is present, and verbally or impliedly authorizes the agent to fix his name to the deed, it becomes the deed of the principal. " The act of signing and sealing is to be deemed his personal act, as much as if he had held the pen, and another person had guided his hand and pressed it on the seal." Story on Agency, *ss.* 50, 51; *Kidder* v. *Prescott,* 24 N. H. 267; *Cushman* v. *Wooster,* 45 N. H. 410.

One object of the statute in requiring an attestation of a will is, to insure identity and prevent the fraudulent substitution of another document. Another object is, to surround the testator with witnesses to judge of his capacity. 2 Greenl. Ev., *s.* 691; *Upchurch* v. *Upchurch,* before cited. And all these purposes are as readily attained in the case where the name of the attesting witness is written by the agent at the request of the principal, as where the latter makes his mark or holds a pen guided by another hand. There are many cases, English and American, which hold the strict doctrine that the witness must himself do some manual act in order to make a valid attestation. The American cases of this character do not appear to have been very thoroughly considered, the courts being apparently content to rest upon the authority of certain English decisions, the grounds and reasons of which are not very fully presented. See *In re White,* 7 Jurist 1045; *In the goods of Duggin,* 39 L. J., N. S., 24.

The point, not being settled by authority in this state, may be determined upon general principles. To require a person, whose name is to be written in a testamentary transaction, to hold or to touch the pen, or to do anything which the law does not require him to do in other cases of attestation, seems to establish a distinction without a difference. And we are of the opinion that this will was properly attested, within the meaning and according to the requirements of the statute.

Concerning the extent of mental capacity required for the valid execution of a will, the instructions of the court were more minute and particular than were necessary.

The special exception is to the following sentence, incorporated in the instructions : " The failure of memory is not sufficient [to affect the capacity to make a will] unless it be total, or extend to the testator's immediate family or property."

If no qualifying language had been used, these words might have misled the jury; but, in connection with the context, such could not

have been their effect. The obvious meaning of the sentence to which exception is taken, when considered in connection with what precedes and follows it, is,—a total failure of memory, extending to and involving the testator's immediate family or property, is sufficient to invalidate a will; but mere weakness of understanding is not.

Where a remark is made that is erroneous, but the court can see that the rest of the instructions are so explicit and clear that the jury could not have been misled, the verdict will not be disturbed. We must regard the jurors as persons of ordinary capacity. *Cooper* v. *Railroad*, 49 N. H. 213.

The instructions upon the circumstance that the will was written by the executrix were proper, and sufficiently favorable to the appellants. Whatever explanation of that circumstance the jury might find necessary or unnecessary, sufficient or insufficient, it is not a matter of law that any general or special explanation was required. 1 Redf. Wills (4th ed.) *122.

*Judgment on the verdict.*

Doe, C. J., and Stanley, J., did not sit.