## PAGE *v.* PARKER.

A motion for a nonsuit will not be granted where there is any evidence in the case competent to be submitted to the jury, tending to show that the defendant is liable.

Where two or more have entered into a conspiracy to defraud the plaintiff, any act done by either of the conspirators, in furtherance of the common object, and in accordance with the general plan of the conspirators, becomes the act of all, and each conspirator is responsible for such act.

Where a man has combined and conspired with others to cheat and defraud the plaintiff in the sale of certain property, by fraudulent concealments and misrepresentations, and the fraud has been perpetrated accordingly by some other member or members of the conspiracy, he will be liable, although he may not, individually, have made any fraudulent misrepresentations, or have fraudulently concealed any thing in regard to the condition or qualities of the property in question.

In an action for deceit and fraud in the sale of property, where the purchaser retains it, and where numerous misrepresentations in relation to the property, or in relation to several distinct particulars or qualities of the property are found to have been made by the vendor, some of which may be material and others immaterial, some fraudulent and others honestly made, though all are false in fact, the rule of dam-

ages is the difference between the actual value of such property and its value as it would have been if it had been such as it was represented to be in those particulars concerning which the false and fraudulent representations were made on which the verdict was founded.

In such case, the price paid is strong but not conclusive evidence of the value of the property as it was represented to be, whether such representations were fraudulently or honestly made, provided they were material.

The rule of damages, in cases of warranty and of deceit and fraud in the sale of property, is the same only when the warranty in the one case covers those qualities and properties of the article sold, and those only, concerning which the misrepresentations in the other case are material and fraudulent as well as false.

THIS was an action on the case, brought by David Page against David M. Parker, William M. Parker, and Henry W. Reding, for conspiring together to cheat and defraud the plaintiff, and defrauding him by selling to him at a price greatly exceeding its value, two thirds of a certain soap-stone quarry, in Haverhill, N. H., together with some personal property connected therewith. The first and third counts in the declaration were stricken out before going to the jury. The second count is made a part of this case. A nonsuit was moved as to David M. Parker, on the ground that there was no evidence tending to charge him. The motion was denied and the defendants excepted.

It was proved that David M. Parker was the owner of the quarry, and the brother of William M. Parker. It was also proved that David M. Parker himself executed the deeds to Reding and Page, and caused them to be deposited with Mr. Felton, in accordance with said agreements; the one to Page being executed October 2, 1856, and the one to Reding being executed October 4, 1856. There was evidence to show that all the material representations set forth in the declaration were made directly by William M. Parker and Reding to Page, and that Reding, although he received a deed of one third of the quarry, and represented himself to Page as a joint purchaser with him, was, in fact, assisting the Parkers to make a trade, and paying no money for his third; and that Page knew nothing of the real position of Reding in the transaction; representing that the quarry was worth from $25,000 to $30,000—a great bargain at $15,000—but concealing from Page the material fact that they were actually selling the premises at $10,000.

The case, as transferred, contained a large portion of the testimony in the case, which it is not here necessary to state, except so far as it appears in the opinion of the court.

Upon the evidence, the court charged the jury that to enable the plaintiff to maintain this action, they must find all the defendants to have combined and conspired jointly to defraud the plaintiff in and by the sale to him of the soap-stone quarry; that there was a common design and purpose on their part, and that a positive fraud had been thus committed by the defendants upon the plaintiff, and a damage resulting to himself therefrom. The plaintiff must show, not only that the representations made to him were false, and known at the time to be so, but that they were intended to deceive him, and that he believed and acted upon them as true; that when there is an intentional concealment or suppression of material facts,

in the making of a contract in cases in which both parties have not equal access to the means of information, it will be deemed unfair dealing, and will vitiate the contract. The law requires truth and good faith in dealings among men, and these forbid a false representation, made knowingly, or the fraudulent concealment of material facts exclusively known to the party who conceal them. But when both parties know, or with ordinary care might discover the facts, and there be no misrepresentation or warranty, the buyer is his own insurer, and the law will give him no remedy.

The defendants requested the court to instruct the jury that if they believed that Reding made no representation intentionally false, except in respect to what he was to pay for the property, and in respect to how he was to obtain the means of payment, and that there was no fraudulent concealment on his part, except as to what he was to pay, and in respect to how he should obtain the means of payment, the jury should find him not guilty. The court declined to do this, instructing the jury that they should find him guilty or otherwise, upon considering and weighing all the evidence in the case, and upon the principles of law before suggested.

2. The defendants' counsel requested the court to instruct the jury that if they believed the defendants to have made false and fraudulent representations to the plaintiff, in respect to only one material matter affecting the value of the property sold, the jury should assess damages only in respect to that one matter; and thereupon the plaintiff's counsel requested the court to instruct the jury that if they found that the defendants conspired and agreed together to cheat and defraud the plaintiff, and made any material representation to the plaintiff that was false, fraudulent, and made for the purpose of carrying out said conspiracy, then the jury would be justified in finding the defendants guilty.

The court, however, referring to the rule of damages as adjudged in this case at a former trial, gave it as their guide in the present case, that when the purchaser retained the property, if the jury found for the plaintiff, they might assess in his favor, as damages, the difference between the actual value of the property purchased, and its value as represented to be at the time of the sale, the price paid being very strong but not absolutely conclusive evidence of the value of the property as it was represented to be. Upon the subject of damages, the court declined to instruct otherwise than as above stated.

The jury having returned against the defendants their verdict for the sum of $10,800.72, the defendants moved to set the same aside and for a new trial for the causes assigned. They also moved in arrest of judgment on account of the insufficiency of the plaintiff's declaration, and the questions of law were reserved.

*Hibbard,* and *C. W. & E. D. Rand,* and *Page,* for the plaintiff.

*Woods & Binghams,* for Parkers, defendants.

*Felton,* for Reding, defendant.

SARGENT, J.  The motion for a nonsuit as to David M. Parker, in this case, was properly denied.  It had been proved that he was the owner of the quarry, and the brother of William M., and that David himself executed the deeds to Reding and Page, and caused them to be deposited with Mr. Felton, in accordance with the arrangement of William M., who had acted as the ostensible agent of David, and that all the material representations set forth in the declaration were made directly by William M. and Reding to Page; Reding concealing his true position and relations to the transaction from Page.  In connection with this evidence, it is only necessary to refer to the testimony of William M. Parker to be satisfied that there was some evidence tending to show that David was connected with and interested in the conspiracy and fraud by which the plaintiff suffered, if any such conspiracy existed, or any such fraud was perpetrated, and if there was any evidence tending to prove that fact in the case, competent to be submitted to the jury, then the motion for a nonsuit as to him could not prevail.

William M. Parker testified that he learned part of his information from his brother, &c.: "I told my brother that Reding was going to take one third and Page two thirds of the purchase.  He knew that Reding was to pay nothing except his services, some bills, and personal expenses for going to the quarry.  Every thing between my brother and Reding was understood, and that he was to be interested on favorable terms.  My brother got sick of the quarry in June, 1856.  He gave me entire control over the affair, by power of attorney.  I knew my brother was ready to verify every thing I had been representing, &c.  My brother knew substantially what passed between us; he knew the main facts.  If it proved a bad operation, I understood my brother would consent to have the notes extinguished.  My brother allowed me to write what I was a mind to.  The notes were under his control.  He allowed me to do pretty much as I had a mind to.  I never had any legal right to the money.  The money went into a common purse.  My brother had about $2,000, and I had the balance."

This, taken in connection with the fact that David M. Parker was a witness upon the stand, and did not deny the conspiracy, and in connection with the other testimony in the case, would seem to leave no doubt about the correctness of this ruling.  The jury may have found, from all the evidence, that David M. Parker knew all, and assented to all, and participated in all that was done, and was the originator and instigator of the whole plan, whose execution was entrusted to other hands.

The instructions in regard to what the jury must find, in order to charge all the defendants, are not objected to.  They would seem to be full and sufficient.  The remarks that were made by the court, in regard to the general principles on which parties should proceed in making contracts, were not very material to this case, and are not important to be considered.

The instructions that were requested in relation to Reding were properly withheld.  It is argued that the misrepresentations that he admits he made to and the facts which he admits he concealed from

Page, were not material in the case, and were not set forth in the plaintiff's declaration, nor relied on by him at all in making out his case. That may all be true, and yet the ruling be correct. If the jury found that Reding, with the other two, had combined and conspired to effect a common object, and it was arranged that each should do certain acts and perform certain parts, with a view to the attainment of the same common result, or that one or two were to be the active agents, while the other one or two remained in the back-ground, and took no open and visible part in the transactions, yet they would all be alike responsible for the acts of all and of either one. Whatever is done or said by either one of the number in furtherance of the common design, becomes a part of the res gestœ, and is the act or saying of all.

In this view, it would make no difference whether Reding did any thing himself, provided he was a member of the combination or conspiracy, so as to become responsible for the acts of the others. But it is argued by counsel that, if there was no fraudulent concealment on the part of Reding, he could not have been a member of the combination to defraud Page, because, if he was such a member of the conspiracy, and did not communicate it to Page, that, of itself, was a fraudulent concealment. But that was not the way the instructions were understood, or would ever be understood in that connection.

The terms, fraudulent representations, and fraudulent concealments, in the sale of an article, refer, ordinarily, to the communications made between the parties in regard to the qualities of the article, whether good or bad. The fraudulent representation is some recommendation of the article or statement in regard to its good qualities, which is known to be untrue; and the fraudulent concealment is the intentionally omitting to disclose some bad quality, or some fact in relation to the property known to the vendor and unknown to the purchaser, which it is material that the latter should know, to prevent being defrauded.

This was the kind of concealment referred to in the instructions requested. They were so understood, and would be always, we have no doubt; and if any concealed meaning was covered in these instructions, not apparent on their face, no benefit should be received from it. When instructions are desired, they should be plainly and fully stated. If counsel intended, by these instructions which they asked, what they now suggest that they did, it was their plain duty to have put them in a clear and tangible form, and to have requested the court to instruct the jury that, if they found that Reding was not a party to any combination or conspiracy to defraud Page, and that he made no representations intentionally false, except, &c., they should have found him not guilty; then they would have been understood. But such instructions would not, of course, be asked for, because they had already been substantially given, or if not they would have been, without hesitation. But no such interpretation can fairly be given to the instructions desired.

The plaintiff's counsel requested the court to instruct the jury that, if they found that the defendants conspired and agreed to-

gether to cheat and defraud the plaintiff, and made any material representation to the plaintiff that was false and fraudulent, and made for the purpose of carrying out said conspiracy, that the jury would be justified in finding the defendants guilty.

We understand, from the case, that these instructions were not given; and, in the terms in which they were requested, they were properly withheld, and could not properly have been given. They leave out altogether one of the main elements upon which the jury could find for the plaintiff at all; that is, that the plaintiff credited said representation, acted upon it, and was, in consequence, damaged. Without these qualifications they should have been withheld, as we understand they were; but, with these qualifications added, they would have been proper, and would, undoubtedly, have been given.

The rule of damages, as given to the jury by the court in this case, taken in connection with the instructions requested by the defendant, have required and received a careful examination.

It is not every false affirmation of the vendor of property that will give the vendee an action, even though he may be deceived by it. If the buyer trusts to representations which were not calculated to impose upon a man of ordinary prudence, or if he neglects the means of information easily within his reach, it is better that he should suffer the consequences of his own folly than to give him an action against the seller. Sudg. Vend. 2, 3; *Bowring* v. *Stevens*, 2 C. & P. 337.

No action will lie for a false representation by the vendor concerning the value of the thing sold, it being deemed the folly of the purchaser to credit the assertion, and beside, value is a matter of judgment and estimation, about which men may differ. Nor will an action lie for a false affirmation that a person bid a particular sum for the estate, although the vendee was thereby induced to purchase, and was deceived as to the value. And so of other cases where the purchaser might, by the exercise of common prudence, have ascertained the truth, and saved himself from injury. *Harvey* v. *Young*, Yelv. 21; *Bailey* v. *Merrill*, Cro. Jac. 386; *Davis* v. *Meeker*, 5 Johns. 354; *Fenton* v. *Brown*, 14 Ves. 145; *Van Epps* v. *Harrison*, 5 Hill 63.

In such cases the false affirmation, though knowingly and intentionally made, is not enough. The vendee must go further, and show that some deceit was practiced for the purpose of putting him off his guard. *Van Epps* v. *Harrison*, before cited; *Davis* v. *King*, 1 Stark. 75. Though a distinction has been made between a general affirmation as to the value of the thing sold, and a false statement that the property was rented for £42 per annum, when the rent was much less than that, whereby the plaintiff was deceived and induced to pay a high price for the property. *Elkins* v. *Kesham*, 1 Lev. 102; *Lysney* v. *Selby*, 2 Ld. Raym. 1118; *Lysney* v. *Selby*, 1 Salk. 214; *Dobell* v. *Stevens*, 3 B. & C. 623; *Bowring* v. *Stevens*, 2 C. & P. 337. And for the reason, as stated by *Gould*, J., in *Lysney* v. *Selby*, that " The value of the rents was a hard thing to be known, and secret, known to none but the landlord and the tenants, and

they might be in confederacy together." And it was held in *Van Epps* v. *Harrison*, before cited, that a fraudulent representation that a piece of property cost the vendor $32,000, when, in fact, it cost him but $16,000, furnished a good ground of action — *Bronson*, J., dissenting, and holding that the statement of what the property cost was but another mode of asserting that the property was of that value, which latter representation is not actionable, though false. But we think the holding of the court was right in that case.

Again, not every false representation, though material, and though acted on by the purchaser to his damage, is actionable in this form of action. Where there is a warranty, and the purchaser acts upon it, and the article proves to be defective in some quality covered by the warranty, the purchaser has his action. And it makes no difference whether the vendor knew of the defect or did not know of it; he must make his warranty good. But in an action for deceit in the sale of property, it is not only necessary that the misrepresentation be false, but it must also be fraudulent, in order to be actionable. There may be many misrepresentations made, all of which are false in fact, a part of which are fraudulent, and a part ignorantly but honestly made. In this form of action no damages can be recovered for the latter class of misrepresentations, however much the purchaser may have been influenced and damaged by them. The fraud being the gist of this action, it is only those misrepresentations that were material and fraudulently made that can be actionable here.

No fault is found with the instructions given in regard to these matters. The court instructed the jury not only that they must find that the conspiracy was entered into, &c., but "that a positive fraud had been thus committed by the defendants upon the plaintiff and a damage resulting to him therefrom ; that the plaintiff must show not only that the representations made to him were false, and known to them at the time to be so, but that they were intended to deceive him, and that he believed and acted upon them as true ; that, when both parties knew, or, with ordinary care, might discover the facts, and there be no misrepresentation or warranty, the buyer is his own insurer, and the law will give him no remedy." These instructions seem to be correct, so far as they go, and are sufficient, on the point of materiality of the misrepresentation, and the necessity of its being fraudulent, as well as false, in order to be actionable here. 40 N. H. 69.

Upon the former trial of this case, at the trial term, the court instructed the jury that the measure of damages, if they found for the plaintiff, "was the difference in the value of the property as it actually was, and its value as it would have been if it were such as it was represented to be, in those particulars in relation to which the false and fraudulent representations were made, on which the verdict was founded." 40 N. H. 58. And these instructions are held to be substantially correct, in the opinion formerly delivered in this case, with the qualification that the price paid should be taken as very strong though not absolutely conclusive evidence of the value of the property as it was represented to be. This qualifi-

cation seemed necessary, else the damages might often be much larger than the whole amount of the purchase money, and the purchaser keep the property beside.

Let us suppose that in a given case the representations should be that the stone from a certain quarry was worth $20 per ton, and would bring that price in the market; that $10 per ton would cover all expenses of working, quarrying, and transporting the same to market; that the quarry was extensive enough so that one hundred men could work to advantage upon it all the time, and that they could get out eight and one third tons of the stone per month, each man; that the supply was sufficient to last, when worked at that rate, ten years, without extra expense of working, and that the demand would and must necessarily keep in advance of the supply for that length of time. These being the representations, suppose the purchaser, relying upon them all, and equally upon each, makes the purchase at $50,000, and it proves that all these representations are false and fraudulent in every particular, and that the quarry is perfectly worthless; and now the purchaser, having paid his money for the quarry, brings his suit for damages. By what rule shall his damages be assessed? Shall he recover the difference between the value of the quarry as it was represented to be by the vendor, and its actual value?

Its value, as represented, could be seen by a brief calculation: $8\frac{1}{3}$ tons per month is 100 tons per year for each man. This, multiplied by 100, the number of men, gives 10,000 tons per year. This, multiplied by 10, the number of dollars of net profit per ton, gives $100,000 per year; and this, for 10 years, gives $1,000,000. As represented, it was worth that amount. It is actually worth nothing. The damages can not be the difference between the value as represented and the actual value, as the plaintiff has paid but $50,000.

It is evident that, although the plaintiff trusted somewhat to all the representations made, yet he did not do so to the full extent. He trusts so far to the representations that he concludes to pay his $50,000 for the quarry, and that is all he has been damaged. Hence the necessity of making the price paid strong evidence of the value as represented to be. In other words, it is the value which the purchaser was induced to put upon the property in consequence of the fraudulent representations made to him; the amount which, by these misrepresentations, he was induced to pay for what has proved to be worthless.

The court, in the former decision, wishing to make this qualification in the instructions of the court at the first trial, did not, by any means, intend to leave out of view the other qualification which was there included, and which is quite as necessary, in a large class of cases, to be observed as any other. The statement of the rule of damages, as stated by the judge who delivered the former opinion in this case, is correct only in connection with the instructions that were given on the first trial, in the court below, as appeared in the case, and which instructions are there said to be substantially correct.

The rule of damages, as stated in the former opinion in this case, without the qualification that had been affixed at the first trial below, is said to be the rule in ordinary cases, or " under ordinary circumstances."   40 N. H. 72.   The same rule had been substantially laid down before, in *Fisk* v. *Hicks*, 31 N. H. 535, and numerous cases cited, and has been since repeated in *Carr* v. *Moore*, 41 N. H. 131, and is found in *Stiles* v. *White*, 11 Met. 356.   This rule, as stated, is correct in a class, and in much the larger class of cases, as will be seen by examining the cases cited.   Where there is but a single fraudulent misrepresentation, or upon only a single point, or in relation to a single quality or circumstance, there this rule applies, and needs no qualification, except that the price paid is to be evidence of the value as represented to be.   And in that class of cases, too, the same rule applies in cases of warranty as in actions for deceit and fraud, as is said in *Stiles* v. *White;* because the defendant can not claim a more favorable rule of damages on the ground of his own fraud, in an action of deceit, than he would be entitled to upon his promise in a case of warranty.   In other words, that less damages were not to be recovered in an action *ex delicto*, than in an action *ex contractu*, for the same subject matter.

Take the case of a horse, warranted sound and proving unsound. Then the rule of damages, as stated in 40 N. H. 72, is correct.   And it would be equally so, in case the horse were represented sound when known to be otherwise, in an action for deceit and fraud in the sale.   But take a case where there are many misrepresentations charged, some of which may be fraudulent and others not so, though all may be false in fact, and have deceived the plaintiff, and then the rule, as there stated, is not correct, without the further qualification, which was given at the first trial, that the rule of damages was the difference between the real value and the value as it was represented to be, in those particulars in relation to which the false and fraudulent representations were made, on which the verdict was founded.   And with that qualification the rule will be the same in cases of warranty and deceit, and will be a general rule that may be applied in all cases.

Now suppose the plaintiff paid $11,000 for a piece of property really worth only one thousand ; and we will suppose that there were misrepresentations made in regard to the quality of this property in ten different and distinct particulars, all of which were material, and each affected the value of the property equally with every other, and each influenced the purchaser equally in buying the property.   Now if all these misrepresentations were not only falsely but fraudulently made, then the plaintiff should recover as damages, in an action for deceit and fraud in the sale, $10,000, just the same as he would have been entitled to had the action been upon a warranty in all these ten particulars.

But suppose that these misrepresentations should be found by the jury to have been made fraudulently only in relation to five qualities or particulars, and ignorantly and honestly in regard to the other five particulars.   Then in this action the plaintiff could re-

cover only $5,000, whereas, in a warranty upon all the ten particulars, he could recover $10,000. The rule of damages in the two cases is the same only when the warranty covers the same ground, and no more, that the representations in the other case do, which are both false and fraudulent, and material; and that is as far as the authorities go. A man can not complain that he is held to the same rule of damages in case he fraudulently misrepresents a certain quality of the article sold, that would apply if he had warranted the article in that same particular in regard to which the false and fraudulent representation was made.

In the case before us there were many misrepresentations alleged, and all were alleged to be false and fraudulent. Now if the jury had found that all these misrepresentations were material, and also false and fraudulent, then the rule as given would have been correct. But suppose they found that three of the alleged misrepresentations were upon matters immaterial, that three others were made honestly, though they proved to be false in fact. Then all that the plaintiff could have recovered would be the damages he had suffered in consequence of the four remaining misrepresentations that were material and fraudulent, as well as false. And so if the jury had found that the defendants made false and fraudulent representations to the plaintiff in respect to only one material matter affecting the value of the property sold, they should have assessed damages only in relation to that one matter, which would have been in accordance with the instructions asked for by the defendants.

But these instructions, or any others covering the same ground, were not given, but were refused; and the rule of damages given to the jury was the difference between the real value and the value as represented to be, &c.; and no distinction was made between representations on material or immaterial matters, or misrepresentations fraudulently or honestly made.

Although, as we have seen, proper directions had been given as to what it was necessary to prove in order to make the defendants liable to any damages, yet the rule for the assessment of damages was not properly qualified and defined; and, taking the instructions given in connection with those refused, the jury could hardly have failed to assess damages for all the misrepresentations made, whether material or otherwise, and whether honestly or fraudulently made.

The instructions given at the first trial, that the measure of damages was the difference in the value of the property as it actually was, and its value as it would have been if it were such as it was represented to be in those particulars in relation to which the false and fraudulent representations were made on which the verdict was founded, were substantially correct, so far as they went; and the qualification in relation to the price paid being evidence of the value of the property as it was represented to be, which was added in the former opinion in this case, needs qualifying as there stated, because we have seen that no damage is recoverable for any misrepresentations upon immaterial matters, however false. The price

paid, therefore, must be evidence of the value of the property as it was represented to be, in those particulars only in which the representations were material, whether honestly or fraudulently made.

The motion in arrest of judgment must be overruled, as we see no reason why the present declaration is not sufficient.

*Verdict set aside, new trial granted.*