## COOPER & a. *v.* GRAND TRUNK RAILWAY.

In action *ex delicto* the non joinder of a party who ought to have been made plaintiff, can be taken advantage of only by plea in abatement, or by way of apportionment of damages.

When, in the instructions to the jury, a remark is made that is erroneous, but the court can see that the rest of the instructions are so explicit and clear, that the jury could not have been misled by such erroneous and inconsistent remark, the verdict will not be disturbed.

This was trespass on the case, by Joseph W. Cooper, and John C. Marshall, against the Grand Trunk Railway Company of Canada.

The plaintiffs in the third count of their declaration alleged that they on the 16th day of Nov., A. D. 1816, at Stratford in this county, were driving with due care and prudence their flock of sheep, consisting of about four hundred in number, over and across the defendant's railroad track at the farm crossing of Guy C. Burnside, of Stratford, aforesaid, as they lawfully might do, and that the defendants then and there had a train of freight cars and a locomotive, under the management and control of their servants, and that said

servants so carelessly and negligently guarded, managed and controlled their said engine and cars that they ran into said flock of sheep while crossing their track as aforesaid and killed and destroyd thirty-two of them.   The parties admitted at the outset of the trial at this term that, at a former term of this court the defendant had pleaded a confession of sufficient amount to satisfy plaintiffs claim for damages under their first and second counts, which were not for the same injury claimed in the third count, and that the confession so pleaded had been accepted by the plaintiffs, and that they alone were interested therein; and twenty-four sheep mentioned in the plaintiffs third count had been killed, and it was now suggested and admitted that, one Piper was jointly interested in said sheep as a partner with the plaintiff.   The defendant's plea was the general issue and the defendant now insisted under this state of facts that they were either entitled to a verdict, or a nonsuit.   The court refused both and defendant excepted.

The court ruled that where three are jointly interested as partners and two only sue in an action *ex delicto*, that the objection for the non-joinder can only be taken advantage of by plea in abatement, or by way of apportionment of damages, or in other words : The two plaintiffs can only recover damages, according to their interest, or two-thirds of the whole damages sustained.   To this ruling defendant excepted.

The evidence in this case tended to show that the plaintiffs having collected their flock of sheep, amounting to about four hundred, in the vicinity of Colebrook, drove them to Columbia on the 15th of November, 1866, and on the next morning they were committed to the care of Harry Blodgett, then about fifteen years of age, and Aaron Edmunds, then about nineteen years of age, to be driven by the aforesaid young men on that day to Mr. Guy C. Burnside's in Strafford, there to be kept on Burnside's meadow over that night agreeably to a previous contract or arrangement made with Burnside. Accordingly, said young men, who were two of plaintiff's witnesses in the case, drove them down to Burnsides' arriving their between three and four o'clock P. M.   When they arrived at Burnside's dwelling-house and near the gate which opened to the road leading from the highway to the said meadow, Edmunds went into the house to get Burnside to help drive the sheep into his meadow, as he said he had done when there before.

Edmunds testified he was informed by Mrs. Burnside that her husband was not at home.   Witness then said, I don't know whether I enquired or not, but Mrs. Burnside then told me, *there were no trains then due.*   Subject to defendant's objection the court permitted Edmunds to tell the jury that when he came out of the house he told his comrade, (Blodgett,) that Mrs. Burnside said, "*that there were no trains then due.*"   Accordingly, without delay, the boys drove the sheep some twenty rods to the said crossing; Edmunds went ahead and opened the two gates, and while on the track looked in both directions and listened but neither saw nor heard any trains,

and, they then undertook to drive the sheep across the track.     It appeared that some of the sheep undertook to go down the track and some others ran back upon an adjacent hill, and while the young men were thus engaged in getting them over, and many of them were on the track, the defendant's freight train of twenty-nine cars, drawn by two locomotives, came suddenly upon them, thereby causing the death of the aforesaid twenty-four sheep.     The evidence tended to show that the said train was two and one-half hours late on that occasion, that the said crossing was on a curve, that it was located about eighty rods above the station; that it was customary to blow the engine whistle at Platt's crossing, some one hundred rods above the Burnside crossing; whether the sheep could be seen by the engineers for the distance of fifty or sixty rods while approaching the crossing, or even more than twenty rods was a matter upon which contradictory evidence was offered; and also, whether the whistle was blown at Platt's or not.     It was proved by the defendant that most of the cars had brakes upon them, and that when the alarm whistles were sounded one of the brakemen was in the rear or saloon car.     The forward brakeman was in the second locomotive with the engineer and fireman, that the engines applied their brakes and that it required some time for the brakemen to get up to the top of the cars and apply their brakes, and with all their united force they could not stop the train after they discovered the sheep on the track.     It appeared also, that they were running the train when they first saw the sheep at the rate of about fifteen miles an hour. The defendant insisted that it was rash carelessness in plaintiff's boys undertaking to drive the sheep across the track without the assistance of at least one man, as there were no cattle guards at the crossing and defendant was not obliged to have any.     These, with other questions of fact, were submitted to the jury.     The court instructing the jury that defendant was not bound to construct cattle guards at farm crossings.     Subject to the defendant's exception, Joseph W. Cooper, one of plaintiffs, was allowed to testify, "that he had seen these boys when they were driving sheep for them before in the course of that fall several times and they had driven them safely, and that they were good and careful boys in that respect so far as he had observed."     The sheep were all destined for the cars at Littleton.

Reuben B. Marden, (station agent at Stratford Hollow,) was called as a witness by defendant, and among other things, testified on cross examination:     "I did not tell one Edward P. Tibbetts that the train, that caused the accident, was running fast."     Subject to defendant's exception Tibbetts was permitted to testify that Marden, the next day after the accident did tell him in answer to an inquiry by him on that subject:     "That they were just two hours and forty minutes behind time and they were running extra speed."

Agreeably to defendant's written requests the court charged the jury as follows:

1st.     That the plaintiffs must show that they were in the exercise

of ordinary care and prudence in placing their sheep upon the defendant's track in the manner and under the circumstances under which they were placed there by the boys.

2d. That the plaintiffs must prove that the defendant was not in the exercise of ordinary care and prudence in the management of their train at the time and place of the accident, and that the accident was occasioned by the neglect of the defendant, and, without the fault of the plaintiffs contributing in any degree to the same.

3d. That, if the jury find that both the plaintiffs and defendant, were in the exercise of ordinary care and prudence, and that the accident occurred notwithstanding them, then the defendant is not liable.

4th. That the burden of proof is upon the plaintiffs to satisfy the jury, by a fair balance of the testimony, that the defendant is guilty.

In closing, the court remarked to the jury that, taking the foregoing instructions for the law of the case, they would find their verdict against the party that was most to blame.

Defendant objected to the additional suggestion of the court.

The jury having returned a verdict for the plaintiffs, the defendant moves that the same be set aside and for a new trial.

BELLOWS, C. J. It is well settled that the omission to join a person who ought to have been joined as a party plaintiff, can be taken advantage of in an action *ex delicto*, only by plea in abatement, or by way of apportionment of damages. 1 Ch. Pl. 66 ; *Moulton* v. *Robinson*, 27 N. H. 564 ; *Webber* v. *Merrill*, 34 N. H. 202.

The exceptions to the testimony of Edmunds as to what he told his companion, and to the testimony of Cooper as to the experience and capacity of the young men who drove the sheep, do not seem to be urged by the defendant, and we think they furnish no ground for disturbing the verdict.

The testimony of Tibbets that Mardin had told him that the cars were running extra speed, seems to have been received to contradict Mardin, and for that purpose was competent.

The principal question is in respect to the closing part of the charge to the jury. Previous to that, the instructions appear to have been unexceptionable, and the jury were distinctly told that plaintiffs must prove that the accident was occasioned by the neglect of the defendant, and without the fault of the plaintiffs' contributing in any degree to the same. This was sufficiently favorable to the defendant, and could hardly fail to be distinctly understood. The subsequent direction to find a verdict against the party that was most to blame, must, as a guide to the jury, be regarded as inaccurate, and also as inconsistent with the other part of the charge ; and the question is, whether in view of the clear and explicit directions before given, we have reason to fear that the jury were misled. Was there danger that the jury or some of them might be led to understand that their verdict was to be against the party most to blame, even if the plaintiffs' own fault had contributed to the injury. If so the

verdict may have been based upon the finding that defendant was most to blame, and not upon the true ground, viz., the fault of the defendant and the absence of fault in the plaintiffs. It might be plausibly urged that the jury could not have understood that plaintiffs might recover, if their own fault had contributed to the injury, because it is otherwise distinctly stated : and besides in the same sentence, which contains the language objected to, the jury are instructed that they must take the previous directions as the law of the case, and those directions are correct; and upon the whole, we think that the jury could not have been misled by this remark, coupled as it was with the direction to be governed by the law as previously given.

Persons of ordinary capacity, and we must so regard the jurors, could not fail to understand that the plaintiff could not recover, if his own fault contributed in any degree to the accident, for such was the whole drift of the charge ; nor could any juror of common intelligence fail to see that the remark in question was wholly inconsistent with the very explicit rule laid down, and so much so as to show that it was inadvertence, and not intended to be understood according to the natural import of the language.

To a lawyer's mind, especially, it would be evident, we think, that the judge could not have meant what the language would seem to import, and if defendant's counsel understood that the terms were used by mistake, and did not call the attention of the court to it, this would afford an additional reason for not disturbing the verdict.

*Judgment on the verdict.*