Merrimack, }
Dec. 4, 1902. }

### COHN v. SAIDEL & a.

### SAME v. SAME.

In an action for malicious prosecution, the question of malice is one exclusively for the jury, as is also the question of probable cause, so far as it is dependent upon the credibility of the evidence.

Declarations of a conspirator with reference to the common design, made in the absence of his associate, are competent evidence against the latter, and may be admitted in the discretion of the court, before the fact of conspiracy has been established.

A defendant charged with malicious prosecution may show that he was induced to bring his action by what he learned from third parties.

The mere fact that a plaintiff became voluntarily nonsuit does not warrant a finding of want of probable cause, in a subsequent action against him for malicious prosecution.

It is sufficient cause for setting aside a verdict for the plaintiff in an action for malicious prosecution, that from instructions given the jury might reasonably have concluded that the defendant was liable if his suit was brought maliciously, without regard to the question of want of probable cause.

Where the evidence in an action for malicious prosecution tends to show the existence of a conspiracy to injure the plaintiff in his business, the mental suffering caused thereby may properly be considered in the assessment of his damages.

When the decision of material questions in dispute is dependent upon evidence which, although uncontradicted, is not admitted to be true, their determination is within the province of the jury.

CASE, for malicious prosecution.     Both actions were tried together at the October term, 1901, of the superior court, before *Stone*, J., and a jury, and the plaintiff had a verdict.

The declarations alleged a conspiracy between the defendants and one Clark to injure the plaintiff in his business. For some time prior to April 17, 1899, the plaintiff and the defendants were partners in the tailoring business in Concord, the former having charge of the shop and business. On that day the defendants sold their interest therein to the plaintiff for $250. On July 11, 1899, the defendants brought two suits against the plaintiff, and his stock was attached and sold under the statute by the officer. One of the actions so brought by the defendants against the plaintiff was for deceit in the purchase of the defendants' interest in the partnership business ; the other was assumpsit upon the common counts. On the same day Clark brought suit against the plaintiff for breach of contract, and attached his stock in trade. The three suits were entered at the October term, 1899, and continued. At the April term, 1900, they were marked for the jury by the present plaintiff, but the present defendants became voluntarily nonsuit therein, and thereafter paid the costs.

The defendants excepted to evidence, that after they brought their suits they attempted to induce one Spaulding, a wholesale dealer in Boston, not to furnish goods to the plaintiff; and that soon after the defendants became nonsuit, Leon Saidel, one of the defendants, told another witness he had made it cost the plaintiff quite a sum, and he did not want to carry the cases into court and risk having to pay costs.

Davis, a deponent, was asked (*Int.* 4) whether prior to July 11, 1899, he heard conversations between Clark and Leon Saidel, or any one else, regarding the bringing of suits against Cohn. He replied that he had heard several conversations between Clark and one Clifford regarding a suit by the former, and that on some of these occasions Leon Saidel was present. The conversations testified to tended to prove that Clark and Saidel were influenced by malice, and that their suits against Cohn were to be joined for the purpose of making the claim as large as possible and driving him out of business. The question and answer were read subject to the defendants' exception to the admission of evidence of conversations which took place in the absence of Saidel.

The following questions and answers contained in Davis' deposition were admitted in evidence, subject to the defendants' exception :

"*Int.* 6. What reason did Clark and Saidel give for desiring to put you in as keeper? *Ans.* Well, the idea was that after suit was brought and goods were removed, they could use the place to do business in.

"*Int.* 7. And how was your acting as keeper to assist them in doing business in that place? What did they propose to have you

do, as they stated to you? *Ans.* I was to be keeper and the same time do business for them; cutting; do tailoring business there.

"*Int.* 8.   You may state who was present and took part in the conversation or conversations in which the intention was expressed of making the claim against Cohn so heavy that it would drive him out of business, and Clark and Saidel could get his place of business. *Ans.* Mr. Clark, Mr. Clifford, Mr. Saidel, and myself were present.   Mr. Clark exclaimed in his emphatic manner that he would have such an amount that he could not get any bond; he could do nothing; he would have to go out of business; then we could take the store and do what business we wanted in the store, and that he would drive that fellow out of this town.

"*Int.* 10.   You may state whether Clark and Saidel came to an agreement as to the proposition of combining their claims in one suit; and if so, whether they decided to try to do it or not to make the attempt.   *Ans.* I know one time when Mr. Clark was up there, the first of my being in the store, one morning he came over and Mr. Clark said, 'Mr. Saidel, we will go down and see the lawyers and have the thing fixed right up, and go right at it both together.'

"*Int.* 46.   You may state whether the conversations about bringing suit for the purpose of driving Cohn out of business ceased or continued after Clark and Saidel had abandoned the idea of joining their claims in a single suit.   *Ans.* They did not cease until after they found out they were powerless to obtain Mr. Cohn's place of business.   They found that out.   Mr. Clark could not get hold of the business as he thought he could.   He thought he could go in and remove Mr. Cohn and get his place of business."

The defendants alleged that the plaintiff had brought the present suits maliciously and without probable cause, and in support of this contention offered in evidence the fact that he had bought of one Foster a claim against the defendants amounting to twenty dollars, had brought suit thereon, and had made an attachment in the suit.   The evidence was excluded, and the defendants excepted.   They also excepted to the ruling of the court permitting the plaintiff to send to the jury room the deposition of Leon Saidel in the suits complained of, and to the denial of their motion that a verdict be directed for Isaac Saidel, one of the defendants.

Leon Saidel testified that, before the defendants brought their suits, Clark told them that the plaintiff said that prior to buying the defendants out he had taken out of the stock the heavy-weight goods and black goods, so that the stock would appear small; that he had collected and had not accounted for a large sum of

the firm's money; that he had told Saidel there was $500 or $600 in stock, when in fact it was worth a great deal more; and that he had said the accounts due were not good, when in fact they were collectible. Saidel further testified that upon receiving this information he consulted counsel, and told him all he knew about the matter and all that Clark had told him; that his counsel advised the defendants that they had good causes of action against the plaintiff; and that they acted upon that advice in bringing their actions. This testimony was not directly contradicted. Evidence of conversations between Clark and Saidel in the absence of the plaintiff was admitted subject to the latter's exception.

The defendants excepted to a denial of a motion that a verdict be directed in their favor, and also to the refusal of the court to give certain specific instructions fully set forth in the opinions.

So far as it is material, the charge to the jury was as follows: "Now we come to the gist of this case. The plaintiff here brings this suit against the Saidels because he says they brought those two suits maliciously — that they conspired with Clark and brought those suits maliciously against him, to injure him, to drive him out of business, and to hurt his feelings, without reasonable cause. . . . This is the question for you to determine. . . . Regarding the real question in issue, did these Saidels, on the 11th day of July, as set forth by the plaintiff in this suit, conspire with Clark to bring these suits against Cohn, for the purpose of injuring him, breaking him up in business, and otherwise injuring him; and did they do it falsely and maliciously? That is the question. . . . In determining whether they brought these suits maliciously, you will recall the evidence that the plaintiff has offered, . . . you will recall the witnesses who have appeared here on the one side or the other and recall their testimonies, and ascertain whether the Saidels at that time entertained malicious feelings; and if they did, whether such feelings actuated them in bringing these suits. If they brought the suits maliciously intending to oppress and injure this man, then they must be liable, and that would bring you to the question of damages, which I will speak of later. Now the plaintiff has introduced his own testimony, the deposition of Davis, the record evidence, and the full record of all their business. That is the evidence that the plaintiff puts in and relies upon to show that the Saidels had malice in their hearts toward him, and that on account of such malice they brought their suits maliciously intending to injure him. . . . I wish to illustrate to you a principle of law. Mr. Foreman, if you honestly thought that I was owing you a bill, and had good reason to believe that I was owing you, and believed you would have the right to bring a suit against me in the exercise of such care and judgment and

calculation as the average business man would exercise. in your place, you would not be liable for so bringing the suits. Suits of that character are brought every day. Men have the right to bring suits to collect claims due them, and to settle matters that are in controversy; but they have no right to bring suits where they know they have no claims. So the question will come up for your consideration here: Did the Saidels have good reason to believe they had a substantial claim against Cohn? If the Saidels honestly thought Cohn owed them, and in the exercise of average prudence and reason so thought, they had the right to bring the suits, and there, gentlemen, is something for you to determine. The plaintiff says the defendants brought these suits maliciously, and says that the evidence shows it. You will say whether that is so or not; and you have got to weigh the evidence right in there pretty closely, because right in there is the test of this case, and it is a question of fact, on the evidence before you, . . . for your determination, and not for the court. . . . What I mean to instruct you on this branch of the case is, that if the Saidels had no probable cause to believe the truth of the allegations on which their actions were based, or, which comes to the same thing, if the Saidels had no probable cause to believe what they set forth in their writs to be true, and did what they did with malice and to injure the plaintiff, they would be liable, and you will come to the question of damages. . . . If you should find, as I have stated, that the defendants brought their suits in good faith, acting upon such knowledge of the facts as would enable any reasonable man to act, or if they acted in good faith without malice, they are not liable. . . . If a person maliciously prosecutes a good cause of action in the manner provided by law for the recovery of damages therein, there is no remedy because there is no wrong. That is, if these parties had a good, substantial cause of action, and they hated this plaintiff very much indeed, and for that reason brought their actions, they would not be liable. Suppose I owe you one hundred dollars to which there is no defence, the note is due, and you bring suit against me; . . . you do not like me, and that dislike, perhaps, had something to do with bringing the suit against me; I could not reach you by a suit of this kind, because you would have had a just ground of action against me. . . . If you should come to the question of damages, the plaintiff would be entitled to receive compensation for all he has been injured. . . . Where one has been damaged through the fraud and malice of another, the law allows him. liberal damages — more liberal damages than where the plaintiff has simply been damaged by the action of another. A man may do a certain act with reference to another which may result in injury to that other; a man may do a

certain act toward a fellowman which he had no right to do; he may do it carelessly, ignorantly, and it may result in damage to that man. If so, that man has the right to bring suit and recover damages, and he would recover simply what he has been damaged in dollars and cents. But suppose the man doing the damage did it willfully, maliciously, and wickedly, with an intent willfully to injure the other man; then the damages that could be recovered would be on a more liberal scale. . . . If you . . . should find that the Saidels did not act in good faith, but acted maliciously, intending and contriving to injure and oppress the plaintiff, then the plaintiff would be entitled to recover on a more liberal scale than he would if their actions were brought about through carelessness or ignorance." The court also read from the opinion in *Bixby* v. *Dunlap*, 56 N. H. 456, in charging upon the question of damages.

The defendants objected to the part of the charge which held the defendants liable if the suits were malicious, upon the ground that they were not liable, even if the suits were malicious, if they had probable cause of action. They also objected to the charge on the question of damages. The objections were overruled, and the defendants excepted.

*Sargent, Niles & Morrill*, for the plaintiff.

*Martin & Howe*, for the defendants.

BLODGETT, C. J. The refusal to direct a verdict for the defendants was proper. No question of the sufficiency of the plaintiff's declaration being raised, it was only essential to the maintenance of his action that he should satisfy the jury that the proceedings against him instituted by the defendants were malicious and without probable cause. The existence of malice is always exclusively a question for the jury, and so is the question of probable cause so far as it is dependent upon the credibility of the evidence which has been given to prove or disprove its existence. Hence, although in an action for malicious prosecution it is a complete defence that the defendant acted in good faith and upon the advice of counsel learned in the law, after fully and fairly laying the case before him, the court has no right, and will not undertake, to pass upon the credibility of the evidence, with all the inferences which the jury could justifiably draw from it, in respect of these requirements.

The exception to Spaulding's testimony requires no examination. It was manifestly competent; and so was the testimony of the witness, that soon after the defendants became nonsuit Leon

Saidel told him he had made it cost the plaintiff quite a sum, and he was satisfied and didn't want to carry the cases into court and risk having to pay the costs.

The defendants' exception (*Int.* 4, Davis' deposition) to all talk of Clark, when the defendants were not present, about joining suits against the plaintiff and driving him out of business, is not sustainable. The real trouble, if any, with the evidence was not that the part of Clark's talk which was excepted to was made in the defendants' absence, but that the fact of a conspiracy may not have been sufficiently established when the evidence was received. "When the fact of a conspiracy has been proved, or established by reasonable inference, the acts and declarations of one conspirator in furtherance of, or made with reference to, the common design, are admissible in evidence against his associates." 6 Am. & Eng. Enc. Law (2d ed.) 866, and numerous cases there cited; 11 *Ib.* 514; *Page* v. *Parker*, 43 N. H. 363, 367. Whether such proof had or had not then been given does not definitely appear; but if it had not, and even if the objection had been put on that ground, the evidence was properly received, because the requisite proof might be furnished at a subsequent stage of the trial. 1 Gr. Ev., s. 111.

The defendants' exceptions to interrogatories 6, 7, 8, 10, and 46 are overruled, and also their exception to the rejection of their offer to prove that the plaintiff had brought a claim of one Foster for twenty dollars against the defendants, and brought suit and made attachment in said suit. Their exception to the ruling of the court permitting the plaintiff to send to the jury room the deposition of Leon Saidel in the suits complained of was properly not insisted upon at the argument, and requires no further notice; nor does that to the denial of their motion to direct a verdict for Isaac Saidel.

The plaintiff's exception to the testimony as to what Clark told the defendants in his absence, with reference to the plaintiff cheating and defrauding them in the copartnership business and in his purchase of their interest therein, is very clearly unfounded. *Eastman* v. *Keasor*, 44 N. H. 518, 520; *Carter* v. *Beals*, 44 N. H. 408; *Dinsman* v. *Wilkes*, 12 How. 390; 2 Gr. Ev., s. 454. "When the motive of a party in doing an act is in question, it is competent to show that he was induced to do the act by what he learned from third parties." *Carter* v. *Beals, supra.*

The defendants' request that the jury be instructed that "the mere failure of the prosecution, that is, the suits brought by these defendants against this plaintiff, does not establish a want of probable cause," should have been granted. The failure of those suits, though necessary to be proved, was "but a short step

toward the maintenance of an action for malicious prosecution."
*Shaw*, C. J., in *Cloon* v. *Gerry*, 13 Gray 201. "In every case of
an action for a malicious prosecution or suit, it must be averred
and proved that the proceeding instituted against the plaintiff has
failed; but its failure has never been held to be evidence of either
malice or want of probable cause; much less that it is conclusive
of those things." *Strong*, J., in *Stewart* v. *Sonneborn*, 98 U. S.
187, 195. In determining the question of probable cause,—the
most vital point in the case,—it is manifest that the jury would
be very likely to give great weight to the failure of the defend-
ants' suits against the plaintiff, and therefore that the defendants
were entitled to and should have received the benefit of the in-
struction requested; not only was this denied them, but the jury
were left wholly uninstructed on this point and free to draw such
inferences as to them might seem proper, and which could not
well be otherwise than highly prejudicial to the defendants.

The defendants further requested the court to instruct the jury
(*inter alia*) that "to maintain the present actions, the plaintiff
must satisfy the jury by a preponderance of evidence of the exist-
ence of the essential elements of his case, viz.: (1) that the de-
fendants acted maliciously in bringing the suits against the
plaintiff; (2) that the defendants acted, in bringing the suits
against the plaintiff, without probable cause. The question of
probable cause does not depend upon whether the plaintiff was
guilty of the offence charged in the defendants' writs, but depends
wholly upon the defendants' honest belief of the plaintiff's guilt,
based upon reasonable ground. The defendants were at liberty to
act upon the appearances; and if the apparent facts were such
that a discreet and prudent person would be led to the belief that
the plaintiff had done the acts complained of, the defendants are
not liable in this action, and your verdict will be for the defend-
ants, although upon the whole evidence you may believe that the
plaintiff did not do the acts complained of, and that the defend-
ants were mistaken in their belief that he did." The court did
not give the particular instructions requested by the defendants,
and the defendants excepted.

Their exception must be sustained. It is familiar law, so sanc-
tioned by authority as not to be questioned, that, in an action for
malicious prosecution, malice, either express or implied, and the
want of probable cause must both concur; and that while malice
may be inferred by the jury from want of probable cause, the
want of such cause cannot be inferred from any degree of even
express malice. But the court, on the contrary, explicitly charged
the jury that, if they found the defendants' suits were malicious,
that alone was sufficient to maintain the plaintiff's action—the

exact language being: "If they brought the suits maliciously intending to oppress and injure this man, then they must be liable." And again: "Now the plaintiff has introduced his own testimony, the deposition of Davis, the record evidence, and the full record of all their business. That is the evidence that the plaintiff puts in and relies upon to show that the Saidels had malice in their hearts toward him, and that on account of such malice they brought their suits, maliciously intending to injure him." And still again: "The plaintiff says the defendants brought these suits maliciously, and says that the evidence shows it. You will say whether that is so or not; and you have got to weigh the evidence right in there pretty closely, because right in there is the test of this case." It is true that in other parts of the charge an approximately correct statement of the law may be found; but this cannot be held to cure the emphatic error in question, for it plainly tended rather to mystify and involve the case in intricacy, and mislead the jury, than to give them light. In short, the effect was to permit the jury to choose between a multiplicity of inconsistent and disconnected instructions, some wrong and some right, instead of placing the law fairly before them in a few plain, direct, and forcible instructions, which would aid them in coming to an intelligent decision.

The defendants' general exception to the charge on the question of damages is overruled. *Bixby* v. *Dunlap*, 56 N. H. 456, 464; *Kimball* v. *Holmes*, 60 N. H. 163, 164; *Friel* v. *Plumer*, 69 N. H. 498, 500, 501. If there was malice on the part of the defendants and the plaintiff suffered mentally therefrom, he is entitled to compensation for such suffering; and this we take to be the fair and reasonable construction of the charge as reported.

*Verdict set aside.*

All concurred.

Upon the filing of the foregoing opinion both parties moved for a rehearing upon the points discussed in the subsequent opinion.

*Sargent, Niles & Morrill,* for the plaintiff.

*Martin & Howe,* for the defendants.

WALKER, J. In order to sustain the present action, it was incumbent on the plaintiff to prove that the defendants brought the original actions against him without having probable cause therefor, and with malice. This is a burden which he assumed and

which remained with him during the trial. Upon the question of probable cause, he was bound to make it appear upon the evidence more probable than otherwise that the defendants did not have reasonable or probable grounds for instituting their actions against him. That was one of the issues in the case, — perhaps the most important one, — the nominally negative character of which did not make it any the less the duty of the plaintiff to prove it by legitimate evidence. It was also incumbent on him to show that the defendants' suits against him had terminated in his favor; and evidence that they became voluntarily nonsuit therein and paid the costs was properly admitted for that purpose. Did it have any further evidentiary bearing? Was it also sufficient evidence for the plaintiff upon the question of probable cause?

The defendants requested the court to charge the jury that "the mere failure of the prosecution, that is, the suits brought by these defendants against this plaintiff, does not establish a want of probable cause." The court denied the request, and the defendants excepted. Although the word "establish," as here used, may be somewhat ambiguous, the evident meaning of the request is, that the mere fact that the defendants became nonsuit does not warrant a finding of a want of probable cause; the "failure of the prosecution" can have reference to nothing but the nonsuits; and counsel on both sides have assumed in argument that this is the natural effect of the language used, and have discussed the question of the admissibility or sufficiency of that fact as evidence to authorize a finding of the absence of probable cause. If, standing alone, the defendants' act in becoming nonsuit was not legally relevant or sufficient for that purpose, the instruction should have been given. A jury uninstructed in the use of legal terms and unfamiliar with legal procedure might believe that a voluntary nonsuit or dismissal of an action was a formal and deliberate admission by the plaintiff that he never supposed he had a probable cause of action. They might regard that fact alone as decisive of the question, leaving little for their further consideration except the question of damages. Unless such action on their part would be legitimate, the instruction requested should have been given.

Probable cause "is defined to be such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty." *Eastman* v. *Keasor*, 44 N. H. 518, 520; *Woodman* v. *Prescott*, 65 N. H. 224. The plaintiff was required to prove that the defendants, when they brought their suits against him, did not possess such knowledge of facts "as would lead a man of ordinary caution and prudence to believe" that they had a cause of action against the plaintiff. It is argued

that this burden is supported by the mere fact that the defendants of their own motion became nonsuit in their suits. The argument is that that fact alone warrants the inference of a want of probable cause. But the fact of the nonsuit alone is direct evidence of no mental state on the part of the defendants, except that they did not desire to carry on the litigation at that time. It may be said that it establishes that fact conclusively. If it does, and if it might be inferred that they became nonsuit because, as then informed, they did not think they had a probable cause of action, it is necessary to go a step further in this mental operation, and to infer from this inference that the defendants when they brought the suits, nearly a year before, upon information they then possessed, did not as reasonable and prudent men honestly believe they had a cause of action. There is no open and visible connection between the fact proved, viz., that the defendants desired to withdraw their suits in April, 1900, and the fact to be proved, viz., that they had no probable cause of action in July, 1899. A great variety of reasons exist which may induce a plaintiff to become nonsuit, one of which may be that he has discovered or become convinced that he has no case. This, however, is but a mere conjecture; it is but one of a large number of sufficient reasons for such action; it cannot even be said to be the common or ordinary reason that induces a plaintiff to become nonsuit. In a particular case, it may or it may not be the true reason. Unconnected with other evidence, it is pure conjecture. But one conjecture cannot be treated as a proved fact in order to reach another conjecture. The probative bearing of the evidence upon the point in issue is not logically clear and plain, but doubtful and involved, leading to no certain result. "Such a mode of arriving at a conclusion of fact is generally, if not universally, inadmissible. No inference of fact or law is reliable drawn from premises which are uncertain. Whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved, and not themselves presumed." *United States* v. *Ross,* 92 U. S. 281, 283.

Best (Ev., *s.* 90) says the rule is, "that as a condition precedent to the admissibility of evidence, either direct or circumstantial, the law requires an open and visible connection between the principal and evidentiary facts, whether they be ultimate or sub-alternate. This does not mean a necessary connection,— that would exclude all presumptive evidence, — but such as is reasonable, and not latent or conjectural." The legitimate bearing or relevancy of evidence is ascertained by logic and reason applied in the conduct of a trial by jury. If it is illogical and unreasonable to allow the jury to draw conclusions from premises based upon simple conjecture, it is also illegitimate. The most that can be claimed in favor of the

refusal to give the instruction requested in this case is, that it is possible the defendants may have thought they had no probable ground of action when they became nonsuit, and hence, assuming that to be true, it is possible they were of the same mind when they brought their suits. This is piling conjecture upon conjecture, and reaching a result more by guessing than by the exercise of reason and logic. " In a judicial tribunal mere guesses and conjectures cannot be substituted for the legal proof which the law requires." *Horan* v. *Byrnes*, 70 N. H. 531, 533 ; *Jewell* v. *Railway*, 55 N. H. 84, 95 ; *Cutler* v. *Dunn*, 68 N. H. 394, 397 ; *Deschenes* v. *Railroad*, 69 N. H. 285, 291 ; *Carr* v. *Electric Co.*, 70 N. H. 308, 310 ; *Globe Ins. Co.* v. *Gerisch*, 163 Ill. 625 ; *Douglass* v. *Mitchell*, 35 Pa. St. 440, 447 ; *McAleer* v. *McMurray*, 58 Pa. St. 126, 135.

When the defendants became nonsuit they were exercising a legal right which all plaintiffs have before trial. Judgment upon a voluntary nonsuit is no bar to a subsequent suit for the same cause ; nor is it regarded as evidence for the defendant upon the merits. The relative rights of the parties are unaffected so far as the justice of the plaintiff's claim is concerned. He is at liberty to bring a second suit at once after the dismissal of the first; and it has never been understood that on the trial of the second the defendant could use the fact of the nonsuit entered in the first as evidence of an admission by the plaintiff that he had no cause of action, or that he had no probable ground for summoning the defendant into court. The mere act of becoming nonsuit can have no other evidentiary effect than it was intended to have ; and its intended effect depends upon, and is explained by, the ordinary rules of judicial procedure. It is one of the prescribed modes of terminating an action ; and its legal significance as evidence is necessarily limited by the purpose of its use in the conduct of lawsuits. For this reason it is held " that where several pleadings are filed, they are to be tried precisely as if each was pleaded alone ; and the admissions, expressed or implied, in one plea cannot be used as evidence against the party upon other issues." *Buzzell* v. *Snell*, 25 N. H. 474, 480 ; *Pittsfield* v. *Barnstead*, 38 N. H. 115, 121, 122. When a defendant files a confession of the plaintiff's right to recover a certain amount of damages, and pleads to the residue of his claim, the plea to the residue is not, in any manner or to any extent, affected by the confession, though the cause of action is single and indivisible. *McIntire* v. *Randolph*, 50 N. H. 94 ; *Dow* v. *Epping*, 48 N. H. 75. An admission made in pleading does not have the same effect as though it were made in some other way and for some other purpose. If a defendant desires to admit the plaintiff's cause of action, an unambiguous method of

making his purpose known is provided by the rules of procedure; and if a plaintiff intends to concede that he has no cause of action, a *retraxit* or some other definite statement on the record would produce that result; but the mere entry of a voluntary nonsuit is not sufficient evidence of such an intention, because that is not the purpose for which it is used under the rules of procedure. *State* v. *LaRose, ante, p.* 435; *Holmes* v. *Railroad,* 94 Ill. 439; *McGuire* v. *Goodman,* 31 Ill. App. 420; *Smith* v. *Burrus,* 106 Mo. 94; *Van Vliet* v. *Olin,* 1 Nev. 495; *Asevado* v. *Orr,* 100 Cal. 293; *Purcell* v. *Macnamara,* 9 East 361.

Cases which, apparently, are opposed to this conclusion (*Nicholson* v. *Coghill,* 4 B. & C. 21; *S. C.,* 6 D. & R. 12; *Burhans* v. *Sanford,* 19 Wend. 417; *York* v. *Webster,* 66 Ind. 50; *Swindell* v. *Houck,* 2 Ind. App. 519; *Green* v. *Cochran,* 43 Ia. 544; *Kolka* v. *Jones,* 6 No. Dak. 461, 474) are based upon a theory that a voluntary nonsuit, when offered as evidence in an action for malicious prosecution, changes the burden of proof from the plaintiff to the defendant, and makes it incumbent upon the latter to explain why he became nonsuit; in other words, that there is a legal presumption from the fact of a nonsuit that the party electing that course knew he had no cause of action when he brought his action, which, in the absence of explanatory facts, establishes the fact of the want of probable cause. But in this state the burden of proof does not shift (*State* v. *Hodge,* 50 N. H. 510; *Tenney* v. *Knowlton,* 60 N. H. 572; *McKeen* v. *Converse,* 68 N. H. 173), and the weight of evidence, if relevant, is ordinarily determined not by the court, but by the jury. But if it could be shown that the cases above cited are not open to this criticism, it is sufficient to say that they all seem to be based primarily on *Nicholson* v. *Coghill, supra,* the opinions in which discuss the matter with great brevity, and do not seem to be carefully or philosophically considered. The case of *Kolka* v. *Jones, supra,* which is specially relied upon by the plaintiffs, expressly admits " that the voluntary dismissal of an action by the plaintiff is not an admission of want of probable cause," but it is said that it " is entirely different from the question whether it is a reasonable rule to so shift the burden of the proof as to require the party who alone has knowledge of the facts to explain his conduct." In view of the fact that the reasons for becoming nonsuit are numerous, and that the plaintiff's belief that he had no cause of action in the beginning is probably a very rare one, the above rule would not seem to be reasonable, unless it is reasonable to require the defendant to prove his non-liability in the first instance. The logic of legal procedure does not lead to such a result.

As the mere fact of the nonsuit, unconnected with evidence of

the reasons which induced the defendants to dispose of their cases in that way, was not sufficient to support a finding of want of probable cause, the instruction requested should have been given. The want of probable cause does not logically and reasonably follow from that single premise.

The defendants also excepted to "the part of the charge that held the defendants liable if the suits were malicious, upon the ground that they should not be held liable, even if the suits were malicious, if they had probable cause of action." That this is a correct theory of the law in cases of this character is conceded ; but it is claimed on the part of the plaintiff that the charge taken as a whole is not open to this objection. Whether this contention is sound depends, not upon an astute or ingenious explanation which might satisfy a technical lawyer, but upon the meaning a jury of twelve laymen might reasonably attach to it. If instructions from the court are to serve the useful purpose of informing the jury upon the law of the case, they must be given in such language as to convey correct and definite impressions to the minds of men not versed in the knowledge of the law. A technically correct statement of the law might convey to the jury a radically erroneous idea. Too great care cannot be exercised in seeking to make the charge clear, explicit, and unambiguous to the practical, but nonprofessional, minds of jurymen.

A careful examination of the charge in this case makes it clear that the jury might reasonably have concluded, that if the defendants brought their suits maliciously they are liable, without regard to the question of want of probable cause. "If they brought the suits maliciously intending to oppress and injure this man, then they must be liable," is a statement contained in the charge, which was substantially repeated two or three times. Whether there was probable cause for bringing the suits was merely alluded to, but no attempt was made to define that expression or explain its legal bearing. In one or two places the charge upon this subject is substantially correct ; but it is impossible to say that the jury accepted these statements and were exclusively governed by them. In the last part of the charge the court said: "If these parties had a good, substantial cause of action, and they hated this plaintiff very much indeed, and for that reason brought their actions, they would not be liable." But the question is, not whether the defendants had "a good, substantial cause of action," but whether they had a probable cause of action. The jury may have found under the instructions that the defendants, not having a good, substantial cause of action and having brought their suits maliciously, are liable. Taken as a whole, it is apparent that the charge was very liable to lead the jury to this erroneous conclusion,

or to induce them to return a verdict for the plaintiff principally, if not wholly, upon the ground of malice. For this reason, if for no other, the verdict cannot be sustained. *March* v. *Railroad*, 19 N. H. 372, 377 ; *Cooper* v. *Railway*, 49 N. H. 209 ; *Lord* v. *Lord*, 58 N. H. 7, 11.

The charge of the court upon the question of damages presents no error. It was based upon, and consisted principally of a quotation from, the opinion in *Bixby* v. *Dunlap*, 56 N. H. 456, 464, which has been followed and approved in *Kimball* v. *Holmes*, 60 N. H. 163, 164, and in *Friel* v. *Plumer*, 69 N. H. 498, 500. It did not authorize the jury to impose damages as a punishment ; nor can it be said, in view of the plaintiff's evidence of the conspiracy to drive him out of business and to ruin him financially, and of the acts done by the defendants in carrying out that purpose, that the case did not warrant the instruction given. That the plaintiff must have suffered some degree of remorse, anxiety, and solicitude in consequence of the defendants' malicious prosecutions, would be a natural inference, which would constitute an element in the assessment of his damages.

The defendants' final contention is, that the evidence shows conclusively that the defendants had probable cause for prosecuting the plaintiff, and consequently a verdict should be ordered in their favor. If the defendants' testimony were regarded as true, this result might follow. But the credibility of their witnesses was a contested point in the trial. Whether Leon Saidel's testimony as to what Clark told him in relation to the plaintiff's alleged fraud is true, and whether he fully and honestly disclosed to his counsel all the facts within his knowledge bearing upon the question of the plaintiff's fraud, and whether he was governed by their advice in the matter, are questions of fact depending upon the credibility of the witness, although the testimony was not directly contradicted. As Clark was not a witness at the trial, it is not perceived how the plaintiff could contradict Saidel by independent testimony. But however that may be, the fact that he did not contradict Saidel's testimony cannot be treated as a conclusive admission on his part that it was true. As the questions of the defendants' knowledge or information and of their purpose or intent, when they brought their actions against the plaintiff, depend upon evidence not admitted to be true, their determination was within the special province of the jury.

*Motion for rehearing denied.*

All concurred.