**AETNA CASUALTY AND SURETY COMPANY**

v.

**Thomas W. KELLOGG.**

**Civ. No. 89–487–SD.**

United States District Court, D. New Hampshire.

March 10, 1994.

---

John R. Harrington, Concord, NH, for plaintiff.

Thomas H. Trunzo, Jr., Lebanon, NH, Tavian M. Mayer, So. Royalton, VT, for defendant.

## ORDER

DEVINE, Senior District Judge.

This action was originally filed in Sullivan County (New Hampshire) Superior Court on September 18, 1989, by City Bank and Trust of Claremont, New Hampshire, against de-

fendant Thomas W. Kellogg, a citizen of Vermont. Kellogg removed the action to this court pursuant to 28 U.S.C. § 1441, jurisdiction being proper under 28 U.S.C. § 1332. Thereafter, the Federal Deposit Insurance Corporation (FDIC) was appointed liquidating agent of City Bank and Trust, whereupon it automatically became a party in place of City Bank and Trust. On July 13, 1992, the court approved the June 11, 1992, Report and Recommendation (R & R) of Magistrate Judge Justo Arenas, Sitting by Designation, which recommended the granting of Aetna Casualty & Surety Company's action to be substituted as party plaintiff in place of FDIC as liquidating agent of City Bank and Trust. R & R at 5.

The factual background of the instant case is set forth in the R & R at 1–2:

> The facts are as follows: In Vermont State Superior Court, City Bank won a judgment against Lyndonville Savings Bank and Trust Company (LSB & T), a Vermont bank, on May 14, 1991. The total amount of the judgment was $507,385, and it included $170,480 of unpaid principal plus interest relating to losses, referred to in the original writ of this action, on City Bank's loan to Thomas W. Kellogg. Part of the judgment was paid by LSB & T to FDIC as City Bank's receiver in January 1992 and LSB & T was reimbursed by Aetna pursuant to an indemnity bond issued by Aetna.

> The Vermont court found that LSB & T was liable to City Bank for breach of its warranty of good title to the City Bank's cashier's check representing the proceeds of the loan to Kellogg. The check, apparently endorsed by Kellogg, was deposited at LSB & T and presented to City Bank for collection. Finding Mr. Kellogg's endorsement to be unauthorized, the Vermont court held LSB & T liable for breach of the presentment warranty of the genuineness of prior endorsements that arises automatically in favor of a payor bank, such as City Bank, under section 4–207 of the Uniform Commercial Code. Aetna reimbursed LSB & T for the amount paid to FDIC because, under the terms of the bond it issued, Aetna was required to indemnify LSB & T against a loss resulting from forgeries on negotiable instruments. Aetna, having satisfied the judgment against LSB & T, now seeks to enforce City Bank's rights against Kellogg through subrogation.

Regarding Aetna's motion to be substituted as party plaintiff, this court approved the magistrate judge's determination that

> [s]ince the issue of the parties' liability was not fully litigated or necessarily decided by the Vermont court and City Bank's interest has been transferred to Aetna through reimbursement of the Vermont judgment, Aetna has the right to subrogation. In addition, subrogation in the instant case is the appropriate equitable remedy for Aetna because Aetna has satisfied the debt and is entitled to be substituted as plaintiff in the action against Kellogg, the party allegedly responsible for the loss on the forged instrument.

R & R at 5.

In his amended answer and counterclaim, defendant Kellogg filed counterclaims against Aetna for City Bank's "bad faith" and for malicious prosecution.

Now before the court are (1) plaintiff's motion to dismiss counterclaims and for partial summary judgment, (2) defendant's motion to dismiss, (3) defendant's motion to strike, and (4) plaintiff's motion for Rule 11 sanctions. The opposing party has objected to each of the foregoing motions.

### Discussion

#### A. Aetna's Motion to Dismiss Counterclaims and for Partial Summary Judgment

Aetna moves to dismiss defendant's counterclaims for breach of implied covenant to act in good faith and for malicious prosecution pursuant to Rule 12(b)(6), Fed.R.Civ.P. In the alternative, plaintiff moves for summary judgment on said counterclaims. Plaintiff also moves for partial summary judgment on defendant's affirmative defense of payment.

### 1. Breach of Implied Good–Faith Duty

In his first counterclaim, defendant asserts, inter alia,

3. That the loan documents which form the basis of Plaintiff's complaint were arranged by Carl E. Kelton, Jr. in concert with agents/employees of Plaintiff in violation of both state and federal banking laws, to channel the loan proceeds to Carl E. Kelton, Sr.

4. That at all material times herein, Plaintiff had actual knowledge of the financial circumstances of Carl E. Kelton, Sr., that he could not qualify for the proposed loan from Plaintiff. As a consequence, Plaintiff acting in concert with Kelton, permitted Kelton to arrange for the fraudulent documents to appear in Defendant's name.

Amended Answer and Counterclaims of Thomas W. Kellogg at 3.[1] In moving to dismiss said claim under Rule 12(b)(6), Aetna asserts, inter alia, that as subrogee to the claims of LSB & T and City Bank against Kellogg, it did not assume any liability of its subrogors to defendant.

Under New Hampshire law, "[t]he doctrine of subrogation presupposes the payment of a debt by a party secondarily liable therefor, who thereby acquires an equitable right to be reimbursed by the principal debtor and for the purpose of making this right effective is invested with all the rights which the creditor had against him (the principal debtor)." *McCullough v. John B. Varick Co.*, 90 N.H. 409, 411, 10 A.2d 245, 247 (1939). Aetna was substituted as party plaintiff in this action as subrogee to the rights of LSB & T and City Bank against defendant.

"One who rests on subrogation stands in the place of one whose claim he has paid, as if the payment giving rise to the subrogation had not been made." *United States v. Munsey Trust Co.*, 332 U.S. 234, 242, 67 S.Ct. 1599, 1603, 91 L.Ed. 2022 (1947). Accordingly, "an insurer, by a right of subrogation, steps into the shoes of the insured and can recover only if the insured could have recovered. The subrogee has no greater rights against a third party by virtue of its status as the insurer." *E.H. Ashley & Co. v. Wells Fargo Alarm Services*, 907 F.2d 1274, 1277 (1st Cir.1990). *Accord Sibson v. Robert's Express, Inc.*, 104 N.H. 192, 195, 182 A.2d 449, 451 (1962).

■ Here, defendant seeks to assert a claim against Aetna, as subrogee, for the alleged tortious conduct of City Bank. Under the doctrine of subrogation, a subrogee's right to recover is clearly subject to the same defenses that could be asserted against the subrogor. *Id. See also* 6A John A. Appleman, *Insurance Law and Practice* § 4102 (1972) ("an insurer's right of recovery against a tort-feasor is subject to the same defenses that might have been invoked against the insured"). Indeed, defenses asserted by Kellogg in his Amended Answer are based on the same tortious conduct alleged in this counterclaim.[2] However, defendant does not provide, nor has this court discovered, any authority to support defendant's contention that, under New Hampshire law, defendant is entitled to assert a counterclaim against Aetna, as subrogee, for the tortious conduct of one of its subrogors, City Bank. Accordingly, defendant's counterclaim for breach of implied duty of good faith must be dismissed.

### 2. Malicious Prosecution

■ Plaintiff moves to dismiss defendant's counterclaim of malicious prosecution on the ground that said claim is premature.

Under New Hampshire law,

[a] successful action for malicious prosecution requires proof that the plaintiff was subjected to a civil proceeding instituted

---

1. In determining whether dismissal of defendant's counterclaims under Rule 12(b)(6) is proper, the court accepts the well-pleaded facts contained in defendant's pleadings as true and draws all reasonable inferences in defendant's favor. *Coyne v. Somerville*, 972 F.2d 440, 442–43 (1st Cir.1992).

2. For example, defendant's third defense is that "[p]laintiff's damage was proximately caused by its own negligence;" his fourth defense is that "[p]laintiff failed to mitigate its losses from the conduct it has alleged;" and his seventh defense is that "[p]laintiff's claims are barred by the illegality and unlawfulness of its loan polices [sic] and procedures." Amended Answer and Counterclaims at 2.

by the defendant, *Ferry v. Ferry,* 94 N.H. 395, 397, 54 A.2d 151, 153 (1947), without probable cause and with malice, *Cohn v. Saidel,* 71 N.H. 558, 563, 53 A. 800, 803 (1902), and that the proceedings terminated in the plaintiff's favor, *id.* *ERG, Inc. v. Barnes,* 137 N.H. 186, 190, 624 A.2d 555, 558 (1993). Accordingly, *"[b]efore one can maintain an action for malicious prosecution, the original proceedings must have terminated in his favor." Hellberg v. Norris,* 97 N.H. 222, 223, 84 A.2d 835, 836 (1951) (citing Restatement, Torts § 674(b)) (emphasis added). *See also* Restatement (Second) of Torts § 674(b) (1977).

Kellogg concedes, as he must, that the instant proceeding has not yet terminated in his favor. Until that occurs, defendant cannot state a claim for malicious prosecution upon which relief can be granted. Defendant's claim for malicious prosecution must therefore be dismissed.[3]

*3. Payment*

■ One of the affirmative defenses asserted by defendant in this action is that plaintiff's claims are barred because the underlying loan has been paid in full. Plaintiff moves for partial summary judgment on said defense, arguing that there is no evidence that the loan was paid.

Under Rule 56(c), Fed.R.Civ.P., summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ The party moving for summary judgment has the burden of showing that the evidence is insufficient to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In response, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

Defendant's affirmative defense of payment is asserted on two alternative grounds. First, defendant contends that copies of City Bank's documents indicate that a City Bank cashier's check in the amount of $152,205.27 was used to pay off the loan in question. In the alternative, defendant claims that a $1.1 million note signed by Kelton satisfied defendant's alleged obligation.

In support of its motion for partial summary judgment on the payment defense, plaintiff submits the affidavit of William F. Murray, former president of City Bank and the loan officer responsible for the loan allegedly made by City Bank to defendant. Affidavit of William F. Murray (attached to Plaintiff's Motion for Partial Summary Judgment) at ¶ 1.

As to defendant's first payment theory, Murray states, in relevant part, that the City Bank treasurer's check dated August 17, 1988, in the amount of $152,205.27 was applied, "together with a debit against the Kelton Motors' account in the amount of $2,011.94, to pay off a loan to Kelton's son and daughter-in-law, Vernon and Doreen Kelton."[4] Murray Affidavit at ¶ 5. Murray further states that "[t]he City Bank records show that the Kellogg loan remains outstanding and unpaid." *Id.* at ¶ 12. In response, defendant has failed to submit any evidence to show that there is a genuine issue as to whether the City Bank treasurer's check was applied to pay the loan in question. Plaintiff's motion for partial summary judgment must therefore be granted as to said payment theory.

As to defendant's second payment theory, Murray states in his affidavit that,

---

**3.** Having found that defendant's counterclaims must be dismissed under Rule 12(b)(6), the court does not consider plaintiff's alternative argument that it is entitled to summary judgment on said claims.

**4.** The documents relied on by Murray to verify that the treasurer's check in question was applied to the Vernon and Doreen Kelton loan are attached to Murray's affidavit as Exhibits A and B.

10. On August 16, 1988, Carl Kelton signed a $1.1 million note and security agreement to City Bank in the name of Kelton Motors, which he also personally guaranteed, the purpose of which was to incorporate the security provisions of City Bank's standard form of note in order to pledge additional collateral to secure the loans guaranteed by Kelton Motors.

. . . .

11. The security pledged as part of this transaction, even disregarding prior and conflicting liens, was worth far less than the amount outstanding on the Kelton Motors guaranteed loans. It was never the intention of City Bank that this $1.1 million note would discharge other obligors on the various individual loans, nor did Kelton or any other representative of Kelton Motors' ever tell me that that was Kelton Motors' intention.

Murray Affidavit at ¶¶ 10–11.

In response, defendant asserts that "both Attorney Timothy J. Wells and his wife Leslie K. Wells have testified at deposition that the Defendant Kellogg's alleged obligation was satisfied by the creation of a new $1.1 million [ ] note," and submits excerpts from said depositions.[5] Defendant's Memorandum in Opposition to Motion to Dismiss Counterclaims at 5.

Regarding the purpose of the $1.1 million note, Timothy Wells testified at his deposition as follows:

Q. Okay. Now, is it your testimony that Bill Murray expressly agreed that he was going to take the $1,100,000 Note in lieu of any other obligation that Kelton or any of these truckers had to the bank?

A. That's—that was my understanding.

Q. What did he expressly say that lead [sic] you to believe that he was waiving his rights—all of these rights and was going to completely rely upon the million one Note?

A. I don't recall specifically what he said at this time.

Q. So then what is the factual basis upon which you rely that the million one

Promissory Note was intended to pay off all the individual loans?

A. The factual basis, as I understood it, is that was the consideration for giving the Note. There would be no purpose of giving the Note if it wasn't going to extinguish the liabilities.

Deposition of Timothy J. Wells, Esq. (attached to Defendant's Memorandum) at 42. Similarly, Leslie Wells testified to the following at her deposition:

Q. Okay. What actually—who actually said what that you can testify under oath about on the subject matter of the Note for $1,100,000 satisfying the bank on all of these obligations?

A. In particular, I remember that Bill Murray said to my husband, now, where are the titles? And Tim said, hay [sic], this takes care of it. This replaces all of those Notes. And Bill Murray says, yes, you're right. That was the end of that discussion.

Q. So, that's the total discussion that was had on the subject matter of the bank taking that million one in substitution for all of the obligations shown on Exhibit 3B?

A. That is the only precise conversation that I remember at the closing, but I do remember that there was conversation about it.

Deposition of Leslie K. Wells (attached to Defendant's Memorandum) at 60.

Drawing all reasonable inferences in defendant's favor, on the basis of the evidence before it the court finds that a genuine issue exists as to whether the $1.1 million note signed by Kelton satisfied the Kellogg loan. Plaintiff's motion for partial summary judgment must therefore be denied as to said payment theory.

### B. Defendant's Motion to Dismiss

Defendant moves to dismiss Counts I, III, and IV.[6] As said motion is supported by matters outside the pleadings, plaintiff prop-

---

5. Leslie Wells is Kelton's daughter; Timothy J. Wells is her husband.

6. Plaintiff has waived Counts II and V. *See* Plaintiff's Third Amended Pretrial Statement at 7.

erly responded to it as a motion for summary judgment.[7] *See* Rule 12(b), Fed.R.Civ.P.

### 1. Counts I and III

In moving for summary judgment on Counts I and III, defendant asserts that (1) as a result of an alleged promise not to sue made by William Clauson to defendant, plaintiff is contractually bound not to bring such claims, and (2) the promise made by Clauson constitutes a waiver of said claims.[8] In the alternative, defendant asserts that plaintiff's claims are barred by estoppel.

■ In its objection, plaintiff first contends that defendant should not be permitted to assert the affirmative defenses of waiver and the existence of a contract not to sue because said defenses are being raised for the first time. Plaintiff further asserts that to allow defendant to raise such defenses at this juncture would be prejudicial to plaintiff since plaintiff conducted its discovery without notice of said defenses.

The defenses of waiver and the existence of a contract not to sue are based upon a promise not to sue allegedly made by Clauson during a meeting between defendant and Clauson in September 1988. Said defenses were not, however, raised in defendant's Answer filed October 20, 1989, in his Pretrial Statement filed December 18, 1991, in his Revised Pretrial Statement filed March 8, 1993, or in his Amended Answer and Counterclaims filed March 17, 1993.

■ Failure to plead an affirmative defense generally results in waiver of that defense. *FDIC v. Ramirez–Rivera,* 869 F.2d 624, 626 (1st Cir.1989). While exceptions to this general rule exist, defendant has failed to show that any such exception applies here.

Since the commencement of this action more than four years ago, defendant has had ample time in which to properly raise the defenses he now asserts in the pending motion. Nevertheless, defendant provides no justification for his failure to properly raise

these defenses earlier. Further, both parties have conducted discovery in reliance on the various claims, defenses, and theories raised in the pleadings and pretrial statements filed in this action. After numerous extensions of time for the completion of discovery and two continuances of the trial date, discovery is now closed, and this action is scheduled for trial on April 12, 1994. In light of the foregoing, the court finds that defendant has waived the affirmative defenses of the existence of a contract not to sue and waiver.

■ Defendant asserts, in the alternative, that plaintiff is estopped from bringing the claims set forth in Counts I and III by Clauson's alleged promise not to sue.

The doctrine of estoppel " 'prevents one party from asserting a position contrary to one previously taken when it would be unfair to allow him to do so. It arises when one party has knowingly made representations upon which the other reasonably has relied to his detriment.' " *Johnson v. Phenix Mut. Fire Ins. Co.,* 122 N.H. 389, 393, 445 A.2d 1097, 1099 (1982) (quoting *Appeal of Cloutier Lumber Co.,* 121 N.H. 420, 422, 431 A.2d 112, 113 (1981)). "The application of '[e]stoppel rests largely on the facts and circumstances of the particular case.' *Monadnock Regional School Dist. v. Fitzwilliam,* 105 N.H. 487, 489, 203 A.2d 46, 48 (1964). The party invoking estoppel has the burden of proving that its application is warranted, and 'its existence is a question of fact to be resolved by the trier of fact....' " *Great Lakes Aircraft Co. v. Claremont,* 135 N.H. 270, 289, 608 A.2d 840, 853 (1992) (quoting *Olszak v. Peerless Ins. Co.,* 119 N.H. 686, 690, 406 A.2d 711, 714 (1979)).

The evidence before the court shows that a genuine issue exists as to both the nature of the promise allegedly made by Clauson and the extent to which defendant detrimentally relied on said promise. Accordingly, the question of whether Counts I and III are barred under the doctrine of estoppel is a question of fact to be resolved by the trier of

---

7. Defendant's Motion to Strike Plaintiff's Objection to Defendant's Motion to Dismiss is herewith denied as said objection was timely filed. *See* Local Rule 11(d) and Rules 6(a) and (c), Fed.R.Civ.P.

8. The record before the court indicates that Clauson was the attorney for City Bank at the time said promise was allegedly made.

fact, and defendant's motion for summary judgment on Counts I and III must be denied.

### 2. Count IV

■ In Count IV, plaintiff asserts that defendant breached its "duty to exercise reasonable care not to contribute to the forgery of his name on an instrument on which City Bank was payor or drawee." Complaint at ¶ 8. Defendant contends that said claim should be dismissed because plaintiff cannot show that defendant owed such a duty to City Bank.

■ Defendant's argument ignores the provisions of New Hampshire's Uniform Commercial Code (UCC).[9] Under RSA 382–A:3–406(a) (Supp.1993), "[a] person whose failure to exercise ordinary care substantially contributes ... to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection." Under this provision, a person whose negligence substantially contributes to the making of a forged signature is liable to a person who pays the instrument in good faith. Accordingly, defendant's motion for summary judgment on Count IV must be denied.

### C. Plaintiff's Motion for Rule 11 Sanctions

■ Plaintiff moves for the imposition of sanctions against defendant under Rule 11, Fed.R.Civ.P., on the ground that defendant's motion to dismiss (treated herein as a motion for summary judgment) was frivolous.

Under the recently amended Rule 11, effective December 1, 1993,

By presenting to the court ... a ... written motion ..., an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support. . . .

Rule 11(b), Fed.R.Civ.P.

The purpose of Rule 11 is to deter dilatory and abusive tactics in litigation and to streamline the litigation process by lessening frivolous claims or defenses. See Fed. R.Civ.P. 11, advisory notes. To achieve these goals, Rule 11 requires attorneys to take responsibility for the claims and defenses they represent; attorneys must make reasonable inquiry to assure that the claims, defenses and positions represented by them are well-grounded in both law and fact and are not intended to serve an improper purpose, such as harassment or delay.

Cruz v. Savage, 896 F.2d 626, 630 (1st Cir. 1990) (construing Rule 11 prior to 1993 amendment). As amended, Rule 11 "continues to require litigants to 'stop-and-think' before initially making legal or factual contentions." Notes of Advisory Committee on 1993 Amendment to Rule 11, Fed.R.Civ.P.

Plaintiff contends that defendant violated Rule 11 by failing to make a reasonable inquiry as to whether the affirmative defenses of waiver and of a contract not to sue raised in his motion to dismiss were warranted by existing law. Defendant based his motion to dismiss in part on these two affirmative defenses, despite the fact that said defenses had never been raised in any of the pleadings or pretrial statements filed by defendant over the last four years.

It is well established that the failure to plead an affirmative defense generally results in waiver of that defense. See FDIC v. Ramirez–Rivera, supra, 869 F.2d at 626. While exceptions to that general rule exist, defendant asserted said defenses at the eleventh hour without any explanation as to why

---

9. New Hampshire Revised Statutes Annotated (RSA) 382–A:1–101, et seq. (1961 & Supp.1993).

the court should not find said defenses waived.

The remaining arguments made by defendant in its motion are equally frivolous. For example, defendant's attempt to obtain summary judgment on Counts I and III by asserting the defense of estoppel, the existence of which is a question for the jury, was not warranted by existing law. Further, defendant's contention that no duty existed with respect to Count IV had no legal merit.

Under these circumstances, the court finds that defendant's counsel violated Rule 11(b)(2) by failing to make a reasonable inquiry into whether his assertion of the affirmative defenses of waiver and of a contract not to sue in defendant's motion to dismiss was warranted by existing law.

The court further finds that defendant's filing of the motion described herein amounts to a violation of Rule 11(b)(1).[10]

Under Rule 11(c)(1)(A), a party presented with a motion for sanctions is given the opportunity to withdraw or correct the challenged paper. This provision of Rule 11 "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention." Notes of Advisory Committee on 1993 Amendment to Rule 11, Fed. R.Civ.P.

"A sanction imposed for violation of [Rule 11] shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Rule 11(c)(2). Such a sanction may consist of "an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a result of the violation." *Id.* Accordingly, and in light of the Rule 11(b)(1) and 11(b)(2) violations described herein, the court orders defen-

dant's counsel to pay the reasonable attorney's fees and expenses incurred by plaintiff in opposing defendant's motion to dismiss and in presenting its Rule 11 motion for sanctions.

### Conclusion

For the reasons stated herein, (1) plaintiff's motion to dismiss counterclaims and for partial summary judgment (document 74) is granted in part and denied in part, (2) defendant's motion to dismiss (document 90) is denied, (3) defendant's motion to strike (document 94) is denied, and (4) plaintiff's motion for Rule 11 sanctions (document 96) is granted.

SO ORDERED.

---

**10.** Plaintiff also asserts that defendant's counsel violated Rule 11(b)(3) by failing to make a reasonable inquiry to confirm that certain factual contentions made in defendant's motion to dismiss had "evidentiary support." The factual contentions plaintiff refers to are statements made in defendant's motion which are arguably

contradicted by statements made by defendant in prior testimony. However, beyond pointing out the existence of some arguable contradictions, plaintiff has not shown that said factual contentions lack evidentiary support. Accordingly, the court does not find that defendant has violated Rule 11(b)(3) in the manner alleged.